UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OHIO SECURITY INSURANCE COMPANY,

                   Plaintiff,

      v.

ARCH SPECIALTY INSURANCE COMPANY,

                Defendant.

Civ. No.:
1:24-cv-07128-JLR

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION…………………………………………………………………………1

FACTS……………………………………………………………………………………2

    1.     The Construction Project……………………………………………………...2

    2.     The Underlying Action………………………………………………………...3

    3.     Big Apple's Conviction for Its Insurance Premium Evasion Scheme Involving Lies About Whom It Employed……………………………………………………6

    4.     The Arch Policy…………………………………………………………………..6

    5.     Notice to Arch, Arch's Investigation, and Arch's Disclaimers…………………8

    6.     This Action……………………………………………………………………..9

ARGUMENT……………………………………………………………………………10

    1.     Carthage, Key, and Big Apple Do Not Qualify as Additional Insureds in the First Instance in Connection with Cacho Because They Are Not in Contractual Privity With JJAA……………………………………………………………………10

    2.     Trogon Does Not Qualify as an Additional Insured Under the Arch Policy with Respect to Cacho Because the Allegations in Cacho Do Not Raise the Reasonable Possibility that JJAA Was a Cause of Cacho's Alleged Injury……………………….10

    3.     Any Hypothetical Duty for Arch to Defend Trogon in Cacho Would Have Been Extinguished on May 14, 2024, the Date of Cacho's Deposition Testimony in the Underlying Action……………………………………………………………………13

    4.     The Ohio Security Insureds All Breached the Arch Policy's Notice Condition, Vitiating any Obligations by Arch Under Its Policy that Otherwise Would Have Existed……………………………………………………………………………..15

CONCLUSION……………………………………………………………………………17

i

**TABLE OF AUTHORITIES**

AB Green Gansevoort, LLC v. Peter Scalamandre & Sons, Inc., 102 A.D.3d 425 (1st Dep't 2013)……………………………………………………………………………………………………..10

Admiral Ins. Co. v. Builders Choice of N.Y., Inc., No. 21 Civ. 2460 (NSR) (AEK), 2024 WL 4169549 (S.D.N.Y. Sept. 12, 2024)…………………………………………………………………12

Am. Ins. Co. v. Fairchild Indus., Inc., 56 F.3d 435 (2d Cir. 1995)………………………………….15

Arch Specialty Ins. Co. v. Lineal Contr. Corp., No. 655802/2021 2024 N.Y. Slip Op. 30667(U), 2024 WL 919680 (Sup. Ct. N.Y. County 2024)……………………………………………….16, 17

Atl. Cas. Ins. Co. v. Value Waterproofing, Inc., 918 F. Supp. 2d 243 (S.D.N.Y. 2013), aff'd, 548 Fed. App'x 716 (2d Cir. 2013)……………………………………………………………..16, 17

Burlington Ins. Co. v. N.Y.C. Trans. Auth., 29 N.Y.3d 313 (2017)………………………………….11

Castro v. Prana Assocs. Twenty One LP, 95 A.D.3d 693 (1st Dep.'t 2012)………………………15

Certain Underwriters at Lloyd's, London v. Travelers Cas. Ins. Co. of Am., 664 F. Supp. 3d 288 (E.D.N.Y. 2023)…………………………………………………………………………...11, 12

Colony Ins. Co. v. Sw. Marine & Gen. Ins. Co., No. 22 CIV. 1590 (KPF), 2024 WL 1195401 (S.D.N.Y. Mar. 19, 2024)…………………………………………………………………………10

Consol. Edison Co. of N.Y., Inc. v. Allstate Ins. Co., 98 N.Y.2d 208 (2002)……………………..10

Fitzpatrick v. Am. Honda Motor Co., 78 N.Y.2d 61 (1991)………………………………………….11

Gilbane Bldg. Co./TDX Constr. Corp. v. St. Paul Fire & Marine Ins. Co., 31 N.Y.3d 131 (2018)………………………………………………………………………………………………….10

Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608 (2d Cir. 2001)…………………11, 14, 15

Marine Midland Servs. Corp. v. Samuel Kosoff & Sons, Inc., 60 A.D.2d 767 (4th Dep't 1977)….14

NGM Ins. Co. v. MGC Design & Constr. Corp., 237 A.D.3d 958 (2d Dep't 2025)………….14, 15

N.H. Ins. Co. v. Travelers Indem. Co., No. 22-CV-05968 (CM)(GS), 2024 WL 1484191 (S.D.N.Y. Apr. 5, 2024)…………………………………………………………………………...12

N.Y. Marine & Gen. Ins. Co. v. Travelers Prop. Cas. Co. of Am., 632 F. Supp. 3d 303 (S.D.N.Y. 2022)……………………………………………………………………………………………11, 12

Ohio Sec. Ins. Co. v. Travelers Indem. Co. of Conn., No. 19-cv-1355 (AJN), 2021 WL 797670 (S.D.N.Y. Mar. 1, 2021)……………………………………………………………12, 13

Pioneer Cent. Sch. Dist. v. Preferred Mut. Ins. Co., 165 A.D.3d 1646 (4th Dep't 2018)…….12, 13

Power Auth. of State of N.Y. v Westinghouse Elec. Corp., 117 AD2d 336 (1st Dep't 1986)…….15

Sturges Mfg. Co. v. Utica Mut. Ins. Co., 37 N.Y.2d 69 (1975)……………………………….13, 15

**Other Authority**

Insurance Law § 3420(a)(5)…………………………………………………………………...16

**INTRODUCTION**

This is an insurance coverage action in which plaintiff Ohio Security Insurance Company ("Ohio Security") seeks additional insured coverage for its named insured, Trogon Interiors Inc. ("Trogon"), and its additional insureds, Carthage 124th, LP ("Carthage"), Key Developers Inc. ("Key"), and Big Apple Designers Inc. ("Big Apple") (collectively, with Trogon, the "Ohio Security Insureds"), in connection with an underlying bodily injury action brought by Holban Cacho ("Cacho"). Defendant Arch Specialty Insurance Company ("Arch") issued a CGL policy to JJAA Builders Corp. ("JJAA") in effect on the date of Cacho's accident. None of the Ohio Security Insureds are additional insureds under the Arch policy and, as such, they are not entitled to coverage under the Arch policy. Arch now moves for summary judgment seeking a declaration to that effect.

As an initial matter, Carthage, Key, and Big Apple cannot qualify as additional insureds under the Arch policy because they do not meet the privity requirement in the Arch policy's additional insured endorsement. That is, the Arch policy can only provide additional insured coverage to the particular entity that contracts with JJAA, and JJAA only contracted with Trogon. Arch is entitled to a declaration that it has no obligations to Carthage, Key, and Big Apple on that basis alone.

Next, the Arch policy limits additional insured coverage to instances where JJAA was a cause of the accident and, by extension, limits Arch's defense obligation to any purported additional insured to circumstances where the allegations in the underlying action raise the reasonable possibility that JJAA was a cause of the accident. In short, JJAA had nothing to do with the accident, and there are no allegations in the underlying action suggesting otherwise. Cacho has testified that he worked for Big Apple and only heard of JJAA because Big Apple, a

1

company that has pleaded guilty to fraud in connection with a scheme involving it systematically lying about who it employs, asked Cacho to lie about the identity of his employer after the accident. And, while the third-party complaints in the underlying action contain vague, conclusory allegations that JJAA caused the accident, those conclusory allegations are insufficient to trigger a defense obligation by Arch as a matter of law.

Finally, Arch can have no obligations to the Ohio Security Insureds (and, correspondingly, Ohio Security) because they provided Arch with late notice of the accident, claim, and lawsuit, and Arch was prejudiced by that late notice. Arch did not learn about the accident until nearly two years after it occurred. Arch has been prejudiced by that late notice, and any coverage under the Arch policy that otherwise would have existed has been vitiated as a result. More specifically, upon learning of the accident, Arch conducted an investigation to find and secure JJAA's cooperation in defense of Cacho, but by that time, JJAA had already ceased operations and disappeared. Arch has thus been denied the opportunity to fully investigate and defend the claim, which constitutes prejudice as a matter of law and negates any coverage that otherwise would have existed under the Arch policy.

Discovery is complete, and this Court previously held a hearing in which the Court heard the parties' arguments on why they should be allowed to move for summary judgment. The Court granted those requests, and Arch now timely moves for summary judgment in line with the ordered briefing schedule.

## **FACTS**

### 1.    **The Construction Project**

Cacho was allegedly injured at a construction project located at 224 West 124th Street, New York, New York ("the project"). The project was owned by Carthage, which hired Key as

general contractor.  Ronan Decl. Ex. D.  Key in turn subcontracted with Big Apple.  Ronan Decl. Ex. D.  Big Apple in turn sub-subcontracted with Trogon.  Schulz Decl. Ex. B.

Trogon and JJAA entered into an "Insurance Requirement Addendum: Subcontract Agreement Rider (Owner/General Contractor and Subcontractor)" for the project.  Schulz Decl. Ex. C.  The Trogon-JJAA agreement requires JJAA to have $1 million in CGL coverage per occurrence and to provide additional insured coverage to Trogon and the project owner.  Schulz Decl. Ex. C.

**2.     The Underlying Action**

Cacho was allegedly injured on October 15, 2021, when he fell from a ladder at the project.  Schulz Decl. Ex. D ¶¶ 28, 31.  On October 26, 2021, Cacho commenced an action captioned Holban Cacho v. Carthage 124th, L.P., and Key Developers Inc. (Sup. Ct. Bronx County, Index No. 814517/2021) ("Cacho").  Schulz Decl. Ex. D.  Cacho's complaint alleges that Carthage and Key retained Big Apple to perform work at the project and asserts causes of action against Carthage and Key for negligence and violations of the New York Labor Law.  Schulz Decl. Ex. D.  Cacho's complaint does not allege that he was employed by JJJA or that JJAA was a cause of the accident.  Schulz Decl. Ex. D.  In line with his complaint, Cacho's bill of particulars states that he was employed by Big Apple and does not make any allegations related to JJAA.  Schulz Decl. Ex. E ¶ 17.

On June 21, 2022, Carthage and Key commenced a third-party action against Big Apple alleging that Cacho was a Big Apple employee who was working within the scope of his employment by Big Apple when he was injured.  Schulz Decl. Ex. F.  Carthage and Key's third-party complaint contains causes of action for contribution, common law indemnification, contractual indemnification, and breach of contract for failure to procure insurance against Big

3

Apple.  Schulz Decl. Ex. F.  Carthage and Key's third-party complaint does not contain any allegations related to JJAA.  Schulz Decl. Ex. F.

On August 8, 2023, Big Apple commenced a second third-party action against Trogon alleging that Trogon subcontracted with JJAA and that Trogon's subcontractor employed Cacho. Schulz Decl. Ex. G.  Big Apple's second third-party complaint against Trogon contains causes of action for common law indemnification, contractual indemnification, contribution, and breach of contract for failure to procure insurance.  Schulz Decl. Ex. G.  Big Apple's Second-Third Party Complaint does not allege that JJAA caused the accident.  Schulz Decl. Ex. G.

On September 25, 2023, Carthage and Key commenced a third third-party action against Trogon and JJAA.  Schulz Decl. Ex. ULA Third Third-Party Complaint.  The third third-party complaint contains causes of action for contractual indemnification, common law indemnification, contribution, and breach of contract for failure to procure insurance against JJAA and Trogon. Schulz Decl. Ex. H.  The third third-party complaint alleges in conclusory fashion that if Carthage and Key are found liable to Cacho, then their liability will have been caused by Trogon and/or JJAA.  Schulz Decl. Ex. ULA H ¶ 26.  The third third-party complaint does not contain any factual allegations of what JJAA did or did not do to cause the accident.  Schulz Decl. Ex. H.

On November 9, 2023, Big Apple commenced a fourth third-party action against JJAA. Schulz Decl. Ex. I.  The fourth third-party complaint alleges that Cacho was JJAA's employee and contains causes of action for contribution, common law indemnification, contractual indemnification, and breach of contract for failure to procure insurance against JJAA.  Schulz Decl. Ex I.  The fourth third-party complaint alleges in conclusory fashion that if Cacho was injured, his injury was caused by JJAA.  Schulz Decl. Ex. I ¶ 43.  The fourth third-party complaint

4

does not contain any factual allegations of what JJAA did or did not do to cause the accident. Schulz Decl. Ex. I.

On March 4, 2024, Trogon commenced a fifth third-party action against JJAA. Schulz Decl. Ex. J. The fifth third-party complaint alleges that Cacho was JJAA's employee and contains causes of action for contractual indemnification, common law indemnification, contribution, and breach of contract for failure to procure insurance against JJAA. Schulz Decl. Ex. J. The fifth third-party complaint alleges in conclusory fashion that if Cacho was injured, his injury was caused by JJAA. Schulz Decl. Ex. J ¶ 31. The fifth third-party complaint does not contain any factual allegations of what JJAA did or did not do to cause the accident. Schulz Decl. Ex. J.

On May 14, 2024, Cacho was deposed in the underlying action and testified multiple times that he had worked for Big Apple since 2019, that he was paid in cash, and that he was working for Big Apple on the day of his accident. Ronan Decl. Ex. E at 31:5-12, 32:5-24, 33:5-22, 131:3-16. Cacho testified that he was removing plywood surrounding the concrete superstructure on the fifth floor of the project on the day he was hurt, using equipment and materials provided by Big Apple alongside a Big Apple coworker. Ronan Decl. Ex. E 33:23-34:5, 40:3-41:3, 43:10-19. Cacho testified that he was injured when his ladder fell over as he climbed up to remove plywood that was out of his reach. Ronan Decl. Ex. E at 44:20-45:5.

Cacho testified that after the accident, an employee of Big Apple took Cacho to a park, where they waited for the "boss" of Big Apple, after which the two Big Apple employees took Cacho to a nearby clinic. Ronan Decl. Ex. E at 83:17-84:5, 85:22-86:7. Cacho testified that he had never met anyone from JJAA and that he had been told by a Big Apple employee to give JJAA's name as his employer when reporting the accident. Ronan Decl. Ex. E at 137:11-139:16.

5

Because JJAA ceased operations and disappeared sometime after the accident, it did not appear for its noticed deposition in the underlying action, and Cacho, Carthage, Key, Big Apple, and Trogon all moved to strike JJAA's answer in the underlying action.  Ronan Decl. Exs. F-I.  On January 10, 2025, the court in the underlying action filed an order precluding JJAA from offering testimony at trial.  Ronan Decl. Ex. J.

**3.    Big Apple's Conviction for Its Insurance Premium Evasion Scheme Involving Lies About Whom It Employed**

On January 25, 2022, Big Apple and its principal, Solomon Feder ("Feder"), were indicted for insurance fraud for scheming to evade millions of dollars in workers' compensation insurance premiums by creating a multi-million dollar, off-the-books cash payroll.  Ronan Decl. Ex. K.  The indictment states that Big Apple and Feder colluded with a co-conspirator to issue checks made payable to the co-conspirator's companies, which then cashed those checks and paid Big Apple and Key workers with envelopes of cash handed out at construction sites throughout New York City.  Ronan Decl. Ex. K.  The scheme allowed Big Apple to under report the size of its payroll, thereby enabling it to save millions of dollars on workers' compensation premiums.  Ronan Decl. Ex. K.  Key's principal was also indicted in connection with the scheme.  Ronan Decl. Ex. K.  On October 28, 2024, Big Apple pleaded guilty to insurance fraud in the first degree (a felony), and on December 12, 2024, Feder pleaded guilty to insurance fraud in the third degree (a felony). Ronan Decl. Exs. L, M.

**4.    The Arch Policy**

Arch issued JJAA CGL policy no. AGL0063090-00 with a $1 million per-occurrence limit for the period of December 14, 2020, to December 14, 2021 (the "Arch policy").  Schulz Decl. Ex. A.

The Arch policy's coverage form contains the following notice condition:

6

**2.**     **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.**     You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

**(1)**     How, when and where the "occurrence" or offense took place;

**(2)**     The names and addresses of any injured persons and witnesses; and

**(3)**     The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.**     If a claim is made or "suit" is brought against any insured, you must:

**(1)**     Immediately record the specifics of the claim or "suit" and the date received; and

**(2)**     Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**     You and any other involved insured must:

**(1)**     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit[.]

Schulz Decl. Ex. A at AIG000055-000056.

The Arch policy contains an additional insured endorsement containing the following relevant language:

> **SECTION II – WHO IS AN INSURED** is amended to include any person or organization for whom you are performing operations when you and such person or organization have agreed in a written contract or agreement signed and dated prior to the loss for which coverage is sought that such person or organization be added as an additional insured on your policy, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of your subcontractors:

7

      **a.**      In the performance of your ongoing operations or "your work", including your "completed operations"; or

      **b.**      In connection with your premises owned by or rented to you.

    The person or organization does not qualify as an Additional Insured with respect to any independent act(s) or omission(s) of such person or organization.

Schulz Decl. Ex. A at AIG000012.

**5.    Notice to Arch, Arch's Investigation, and Arch's Disclaimers**

Arch's first notice of Cacho's accident came on June 29, 2023, when Arch received Ohio Security's June 16, 2023 tender letter to JJAA seeking additional insured coverage for Trogon, Big Apple, Key, and Carthage. Schulz Decl. ¶ 13, Exs. K, L. Big Apple had previously tendered to Trogon on May 11, 2023. Ronan Decl. Ex. N. On July 5, 2023, Arch emailed JJAA seeking information on the claim, and when Arch did not receive a response from JJAA, Arch emailed JJAA's broker on July 27, 2023, looking for alternative contact information for JJAA. Schulz Decl. Ex. M. On July 31, 2023, Arch disclaimed coverage to Trogon, Big Apple, Carthage, and Key based on Arch not having been provided a contract requiring JJAA to provide additional insured coverage and the fact that Cacho's allegations did not raise the possibility that JJAA caused the accident. Schulz Decl. Ex. N.

Because Arch had not been able to connect with JJAA, Arch retained Photofax Inc. ("Photofax"), an investigator, to try to locate and interview the principals who operated JJAA. Schulz Decl. Ex. O. However, Photofax's efforts yielded no results. Schulz Decl. Ex. P. Arch then retained Roman & Associates ("Roman"), a second investigator, to continue the search for JJAA. Schulz Decl. Ex. Q. Roman visited addresses associated with JJAA, tracked down possibly associated companies, mailed JJAA letters in English and Spanish to all known addresses, and

called numbers associated with JJAA, but Roman still was not able to locate JJAA. Schulz Decl. Exs. Q, R.

On June 18, 2024, Roman provided Arch a report showing the extent of Roman's unsuccessful investigation, and on July 1, 2024, Roman emailed Arch that there had still been no success in the search. Schulz Decl. Exs. Q, S. Upon hearing from a second investigator that JJAA could not be located, Arch determined that it had been prejudiced by its late notice of the accident, claim, and lawsuit, and on July 12, 2024, Arch disclaimed coverage to the Ohio Security Insureds based on their late notice of the accident, claim, and lawsuit to Arch. Schulz Decl. Ex. T. Arch's July 12, 2024 disclaimer letter also disclaimed coverage to Carthage, Key, and Big Apple based on their lack of contractual privity with JJAA and disclaimed to all the Ohio Security Insureds based on the fact that the allegations in Cacho do not raise the reasonable possibility that JJAA was a cause of the accident. Schulz Decl. Ex. T.[1]

**6.      This Action**

Ohio Security commenced this action on September 20, 2024, and filed an amended complaint on November 6, 2024. Ronan Decl. Exs. A, B. Ohio Security's amended complaint seeks a declaration that Arch owes the Ohio Security Insureds a defense and indemnification in Cacho, as well as reimbursement of defense costs Ohio Security has incurred defending the Ohio Security Insureds in Cacho. Ronan Decl. DJ B. Arch answered the amended complaint on November 22, 2024. Ronan Decl. Ex. C. Discovery in this action is complete, and the Court previously ordered that Arch may make this motion for summary judgment. Ronan Aff. ¶¶ 5, 6.

---

[1] Arch also disclaimed coverage to JJAA but is providing JJAA with a gratuitous defense in Cacho. Schulz Decl. Ex. U.

## ARGUMENT

**1.     Carthage, Key, and Big Apple Do Not Qualify as Additional Insureds in the First Instance in Connection with <u>Cacho</u> Because They Are Not in Contractual Privity With JJAA.**

The additional insured endorsement in the Arch policy limits potential additional insured coverage to the entities that are in contractual privity with JJAA, and therefore Carthage, Key, and Big Apple are not entitled to additional insured coverage.  Schulz Decl. Ex. A at AIG000012 (limiting potential additional insured coverage to "such person or organization" with which JJAA contracts).  Where language in an additional insured endorsement provides additional insured coverage only to "such person or organization" with which the named insured contracts, additional insured coverage is limited to entities in contractual privity with a named insured.  See <u>AB Green Gansevoort, LLC v. Peter Scalamandre & Sons, Inc.</u>, 102 A.D.3d 425, 427 (1st Dep't 2013); <u>Colony Ins. Co. v. Sw. Marine & Gen. Ins. Co.</u>, No. 22 CIV. 1590 (KPF), 2024 WL 1195401, at *8 (S.D.N.Y. Mar. 19, 2024); see also <u>Gilbane Bldg. Co./TDX Constr. Corp. v. St. Paul Fire & Marine Ins. Co.</u>, 31 N.Y.3d 131, 135-36 (2018) (holding additional insured endorsement providing coverage to entities "with whom" the named insured agreed to provide additional insured coverage contained a privity requirement).  Only Trogon entered into a contract with JJAA.  Arch is entitled to a declaration that Carthage, Key, and Big Apple do not qualify as additional insureds under the Arch policy because they do not meet the additional insured endorsement's privity requirement.

**2.     Trogon Does Not Qualify as an Additional Insured Under the Arch Policy with Respect to <u>Cacho</u> Because the Allegations in <u>Cacho</u> Do Not Raise the Reasonable Possibility that JJAA Was a Cause of Cacho's Alleged Injury.**

The additional insured endorsement in the Arch policy limits additional insured coverage to liability caused in whole or in part by JJAA.  Schulz Decl. Ex. A at AIG000012.  It is the burden of the purported insured to show that the claim fits within the scope of the policy's coverage.  See generally, <u>Consol. Edison Co. of N.Y., Inc. v. Allstate Ins. Co.</u>, 98 N.Y.2d 208, 220 (2002).  For

10

Trogon to be entitled to additional insured coverage under the Arch policy, it would have to show that its liability in Cacho was caused in whole or in part by JJAA. See Burlington Ins. Co. v. N.Y.C. Trans. Auth., 29 N.Y.3d 313, 326 (2017). For Trogon to be entitled to a defense under the Arch policy, it would have to show that the allegations in Cacho raise a reasonable possibility of coverage, i.e., a reasonable possibility that JJAA was a cause of Trogon's liability in Cacho. See Fitzpatrick v. Am. Honda Motor Co., 78 N.Y.2d 61 (1991). Additionally, a bill of particulars such as the one Cacho served in Cacho serves as an amplification of the allegations in a complaint and should be considered when determining whether a duty to defend exists. See Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 622 (2d Cir. 2001). Because Trogon cannot meet its burden of showing there is a reasonable possibility that JJAA was a cause of the accident, it is not entitled to a defense (or indemnification) in Cacho, and Arch's summary judgment motion must be granted.

The allegations in Cacho do not raise the reasonable possibility that JJAA was a cause of Cacho's injury. The complaint in Cacho does not allege that JJAA caused Cacho's injury; instead, it does not even reference JJAA and alleges that Cacho's injury was caused by Carthage and Key. Schulz Decl. Ex. D. Additionally, the bill of particulars in Cacho, which was served well in advance of the third-party actions against JJAA, contains no reference to JJAA and states that Big Apple was Cacho's employer. Schulz Decl. Ex. E.

Where the third-party complaints against JJAA in Cacho are concerned, courts in this district and elsewhere have routinely held that allegations in a third-party complaint against a named insured by a purported additional insured are not enough to trigger a defense obligation where the third-party complaint's allegations are conclusory in nature. See, e.g., Certain Underwriters at Lloyd's, London v. Travelers Cas. Ins. Co. of Am., 664 F. Supp. 3d 288, 295 (E.D.N.Y. 2023); N.Y. Marine & Gen. Ins. Co. v. Travelers Prop. Cas. Co. of Am., 632 F. Supp.

3d 303, 308 (S.D.N.Y. 2022); N.H. Ins. Co. v. Travelers Indem. Co., No. 22-CV-05968 (CM)(GS), 2024 WL 1484191, at *7 (S.D.N.Y. Apr. 5, 2024); Admiral Ins. Co. v. Builders Choice of N.Y., Inc., No. 21 Civ. 2460 (NSR) (AEK), 2024 WL 4169549, at *9 (S.D.N.Y. Sept. 12, 2024). Setting aside for the moment that Cacho was not employed by JJAA, allegations that the named insured employed the injured claimant are insufficient to trigger a defense obligation. Certain Underwriters, 664 F. Supp. 3d at 295; Ohio Sec. Ins. Co. v. Travelers Indem. Co. of Conn., No. 19-cv-1355 (AJN), 2021 WL 797670 at *4-6 (S.D.N.Y. Mar. 1, 2021); Pioneer Cent. Sch. Dist. v. Preferred Mut. Ins. Co., 165 A.D.3d 1646 (4th Dep't 2018). Instead, a third-party complaint against a named insured only triggers a duty to defend a purported additional insured when it contains allegations of actual wrongful acts or omissions that caused the accident. Ohio Security, 2021 WL 797670 at *4-6; N.Y. Marine, 632 F. Supp. 3d at 308; N.H. Ins. Co., 2024 WL 1484191 at *7; Admiral Ins. Co., 2024 WL 4169549 at *9.

The third-party allegations against JJAA in Cacho are entirely conclusory and do not allege anything JJAA did or did not do that caused Cacho's injury. Schulz Decl. Exs. H-J. The third-party allegations against JJAA alleging, in essence, that if Cacho was actually was injured, then it must have been JJAA's fault, do not allege any particular facts and therefore are insufficient as a matter of law to trigger an obligation for Arch to defend Trogon. N.Y. Marine, 632 F. Supp. 3d at 308; N.H. Ins. Co., 2024 WL 1484191 at *7; Admiral Ins. Co., 2024 WL 4169549 at *9. The allegation that JJAA provided Cacho the ladder, besides being demonstrably untrue, does not allege that there was anything wrong with the ladder and is therefore irrelevant. Schulz Decl. Ex. J. Beyond that, Cacho testified conclusively that he had never heard of JJAA until after the accident and that all his equipment at the project were provided by Big Apple. Ronan Decl. Ex. E

12

at 137:11-139:16.  Allegations that have been resolved as false cannot form the basis for a duty to defend.  Hugo Boss, 252 F.3d 622.

To the extent that it has been alleged that JJAA employed Cacho, allegations that a named insured employed the underlying plaintiff are insufficient to raise a reasonable possibility that the named insured could have caused the accident.  Ohio Security, 2021 WL 797670 at *4-6; Pioneer, 165 A.D.3d 1646.  Moreover, Cacho testified conclusively that he was employed by Big Apple, not JJAA.  Ronan Decl. Ex. E at 31:5-12, 32:5-24, 33:5-22, 131:3-16.  Prior to his deposition, Cacho confirmed in his bill of particulars that he was employed by Big Apple.  Schulz Decl. Ex. E.  Again, allegations that have been resolved as false cannot form the basis for a duty to defend. Hugo Boss, 252 F.3d 622.  The third-party allegations against JJAA in Cacho do not raise the reasonable possibility that JJAA was a cause of the accident, and Arch is entitled to a declaration that it has no obligation to defend Trogon (or Carthage, Key, and Big Apple) in Cacho.

**3.    Any Hypothetical Duty for Arch to Defend Trogon in Cacho Would Have Been Extinguished on May 14, 2024, the Date of Cacho's Deposition Testimony in the Underlying Action.**

Assuming purely for the sake of argument that the allegations in Cacho could have initially created a duty for Arch to defend Trogon, any such hypothetical duty would have ended after Cacho testified that he was employed by Big Apple, that he was using equipment and materials provided by Big Apple alongside a Big Apple coworker when he was hurt, and that he was not aware of JJAA until a Big Apple employee told him to lie about who his employer was.  While an insurer has a duty to defend an insured in a pending lawsuit when the complaint alleges a covered loss, an insurer is relieved of its duty to defend once it becomes clear that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured.  Sturges Mfg. Co. v. Utica Mut. Ins. Co., 37 N.Y.2d 69, 74 (1975) ("The insurer's duty to defend is, again,

13

not an interminable one, and will end if and when it is shown unequivocally that the damages alleged would not be covered by the policy."); NGM Ins. Co. v. MGC Design & Constr. Corp., 237 A.D.3d 958, 960 (2d Dep't 2025).  "The insurer's duty to defend ... will end if, *and when,* it is shown unequivocally that the damages alleged are not covered by the policy."  Hugo Boss, 252 F.3d at 622 (quoting Marine Midland Servs. Corp. v. Samuel Kosoff & Sons, Inc., 60 A.D.2d 767 (4th Dep't 1977)).  Here, that means that assuming *arguendo* there were allegations raising the possibility that JJAA caused the accident in the first place, any resulting duty to defend would have ceased once Cacho testified that Big Apple employed him, gave him his equipment to perform his work, and told him to lie about the identity of his employer.

NGM is instructive on the issue of deposition testimony cutting off a duty to defend that had previously existed.  In NGM, the named insured, which employed the injured worker, had been sued for common law indemnification and contribution.  NGM, 237 A.D.3d at 958-59.  Common law claims against an employer are barred by the workers' compensation law unless there is a grave injury as defined by statute.  Id. at 959.  The third-party complaint at issue in NGM alleged that there was a grave injury, but deposition testimony from the doctors who examined the injured worker showed that there was no grave injury.  NGM 237 A.D.3d at 959.  The Appellate Division held that the deposition testimony showed that there was no grave injury and extinguished the insurer's defense obligation that had previously existed.  Id. at 961.

Here, Cacho's testimony confirmed that JJAA had nothing at all to do with the accident. Cacho's testimony confirmed that JJAA's only connection to the claim is that Big Apple, an entity convicted of felony insurance fraud for lying about not employing Big Apple's actual employees, told Cacho to lie about who employed him in the aftermath of the accident in order to deflect Big Apple's obligations (or perhaps protect its insurance fraud scheme).

14

In sum, Cacho testified multiple times that he had worked for Big Apple since 2019, that he was paid in cash, and that he was working for Big Apple on the day of his accident. Ronan Decl. Ex. E at 31:5-12, 32:5-24, 33:5-22, 131:3-16. Cacho testified that he was removing plywood surrounding the concrete superstructure on the fifth floor of the project on the day he was hurt, using equipment and materials provided by Big Apple alongside a Big Apple coworker. Ronan Decl. Ex. E 33:23-34:5, 40:3-41:3, 43:10-19. Cacho testified that he had never met anyone from JJAA and that he had been told by a Big Apple employee to give JJAA's name as his employer when reporting the accident. Ronan Decl. Ex. E at 137:11-139:16. To the extent that Ohio Security argues that the third-party allegations in Cacho raise the possibility that JJAA caused the accident—and they do not—the fact that JJAA did not cause the accident is conclusively confirmed by Cacho's testimony, and any hypothetical defense obligation by Arch to Trogon would have been extinguished on May 14, 2024, the date Cacho was deposed. See Sturges, 37 N.Y.2d at 74; NGM, 237 A.D.3d at 960; Hugo Boss, 252 F.3d at 622.

**4.    The Ohio Security Insureds All Breached the Arch Policy's Notice Condition, Vitiating any Obligations by Arch Under Its Policy that Otherwise Would Have Existed.**

Finally, again assuming purely for the sake of argument that Arch had a duty to defend or indemnify any of the Ohio Security Insureds, any coverage that otherwise would have existed for the Ohio Security Insureds would be vitiated by their respective failures to provide timely notice of the accident and claim to Arch. Prompt notice of an accident, claim, and related lawsuit are all conditions to coverage under the Arch policy. Schulz Decl. Ex. A at AIG000055-000056. The notice condition in the Arch policy applies to the named insured and any purported additional insureds alike. See Castro v. Prana Assocs. Twenty One LP, 95 A.D.3d 693, 694 (1st Dep.'t 2012).

Under New York law, delayed notice of one or two months is unreasonable. Am. Ins. Co. v. Fairchild Indus., Inc., 56 F.3d 435, 440 (2d Cir. 1995); see also Power Auth. of State of N.Y. v

Westinghouse Elec. Corp., 117 AD2d 336, 342 (1st Dep't 1986) (holding a 53-day delay in notice to the insurer is untimely).  Arch did not receive notice of the accident until June 29, 2023, when it received Ohio Security's June 16, 2023 tender letter to JJAA.  Schulz Decl. Exs. K, L.  Big Apple was well aware of the accident on the date of the accident.  Ronan Decl. Ex. E 83:17-84:5, 85:22-86:7.  Carthage and Key had been sued in connection with the accident by October 26, 2021. Schulz Decl. Ex. D.  Big Apple had been impleaded by June 21, 2022.  Schuzl Decl. Ex. F.  And, Trogon was aware of the accident and lawsuit no later than the May 11, 2023 tender letter from Big Apple to Trogon.  Ronan Decl. Ex. N.  The Ohio Security Insureds' notice of the accident, claim, and lawsuit was thus late as a matter of law.

Additionally, Arch has been prejudiced by the late notice because the disappearance of its named insured prior to receiving notice has impaired Arch's ability to investigate and defend the claim.  An insurer must be prejudiced by the late notice of an accident or claim in order to disclaim coverage for the claim.  Insurance Law § 3420(a)(5).  An insurer is entitled to disclaim coverage when it has been prejudiced by its insured's late notice, including when the late notice impedes the insurer's ability to investigate or defend the claim.  Atl. Cas. Ins. Co. v. Value Waterproofing, Inc., 918 F. Supp. 2d 243, 256 (S.D.N.Y. 2013), aff'd, 548 Fed. App'x 716 (2d Cir. 2013).  Where the delayed notice results in lost evidence, an insurer has been prejudiced.  Id.  More particular to this case, prejudice exists where an insured has disappeared prior to an insurer receiving notice of the action or claim.  See Arch Specialty Ins. Co. v. Lineal Contr. Corp., No. 2024 N.Y. Slip Op. 30667(U), 2024 WL 919680, at *17-18 (Sup. Ct. N.Y. County 2024).

Arch has been prejudiced by the late notice by the Ohio Security Insureds because it prevented Arch from being able to locate and speak with Arch's named insured, which has disappeared.  Schulz Decl. Exs. P-R.  As a matter of law, the fact that Arch has been prevented

16

from locating and communicating with its insured as a result of the late notice has prejudiced Arch's ability investigate the claim and defend its insured because it prevented Arch from obtaining information about the accident and claim from its insured.  See Atlantic Casualty, 918 F. Supp. 2d at 255-56, Lineal, 2024 WL 919680 at *17-18.

Further prejudice to Arch materialized when the Cacho court sanctioned JJAA for its failure to appear at a deposition by precluding it from presenting testimony to defend its position at trial, which is an obvious impairment of the defense of the action.  In short, the inability of Arch to locate, interview, and work with its insured due to Arch's late notice of the accident and claim has undeniably impaired Arch's ability to investigate and defend the claim.  Arch is therefore entitled to a declaration that any coverage that otherwise would have existed under the Arch policy in connection with Cacho has been vitiated as a result of the Ohio Security Insureds' late notice.

## CONCLUSION

Arch respectfully requests that this Court issue an order: (1) granting Arch's motion for summary judgment, (2) declaring that Arch has no obligation to defend or indemnify Carthage, Key, Big Apple, or Trogon in connection with the underlying Cacho action, and (3) granting such other and further relief as the Court deems appropriate.

Dated: July 30, 2025

KENNEY SHELTON LIPTAK NOWAK LLP

By:    /s/ Matthew C. Ronan
        Matthew C. Ronan

The Calumet Building
233 Franklin Street
Buffalo, New York 14202

*Attorneys for defendant Arch Specialty Insurance Company*

17