UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
OHIO SECURITY INSURANCE COMPANY,

              Plaintiff,                                Civ. No. 1:24-cv-07128

      - against -

ARCH SPECIALTY INSURANCE COMPANY

              Defendant.
------------------------------------------------------------------X

**PLAINTIFF OHIO SECURITY INSURANCE COMPANY'S
MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF CONTENTS.............................................................................................i

INTRODUCTION ................................................................................................ 1

FACTS & PROCEDURAL HISTORY ................................................................ 1

ARGUMENT ....................................................................................................... 4

    THERE ARE NO TRIABLE ISSUES PRECLUDING SUMMARY JUDGMENT IN FAVOR OF OHIO SECURITY. ...................................................................... 4

        1. New York law on an insurer's duty to defend. ............................................ 4

        2. Pleadings in the Underlying Action create a reasonable possibility that Trogon will be entitled to indemnity under the Policy. ........................... 5

    ARCH HAS NOT DEMONSTRATED ITS ENTITLEMENT TO SUMMARY JUDGMENT. ................................................................................................... 8

        1. Cacho's allegation that Carthage and Key caused his accident is irrelevant. ..................................................................................................... 9

        2. Arch overlooks or misconstrues the pleading that JJAA provided the subject ladder. ............................................................................................ 9

        3. Even if the pleadings did not allege that JJAA provided the subject ladder, the various allegations as to the identity of Cacho's employer at most raise an ambiguity that must be resolved in favor of Trogon and Ohio Security.............................................................................................. 10

        4. Arch cannot rely on extrinsic evidence to avoid its duty to defend Trogon.......................................................................................................... 13

        5. Arch does not show it is entitled to summary judgment based on untimely notice............................................................................................ 15

CONCLUSION.................................................................................................... 18

CERTIFICATION OF WORD COUNT................................................................ 19

**TABLE OF AUTHORITIES**

**Cases**                                                                                     **Pages**

*233 East 17th Street, LLC v. L.G.B. Development, Inc.*, 78 A.D.3d (2d Dept 2010) ...................................................................................................... 18

*Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153 (1992)) ......................................... 9

*Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131 (2006) ........................ 5,13

*Bautista v. David Frankel Realty, Inc.*, 54 A.D.3d 549 (1st Dept. 2008) ....... 7,13

*Burlington Ins. Co. v. NYC Tr. Auth.*, 29 N.Y.3d 313 (2017). ......................6,8,10

*Certain Underwriters at Lloyd's, London v. Travelers Cas. Ins. Co. of Am.*, 664 F. Supp. 3d 288 (E.D.N.Y. 2023 ........................................................................ 12

*Citizens Ins. Co. of America v. Illinois Union Ins. Co.*, 105 A.D.3d 679 (1st Dept. 2013) ........................................................................................................... 18

*City of New York v. Harleysville Ins. Co.* (682 F. Supp. 3d 335 (S.D.N.Y. 2023) ...................................................................................................................12,13

*Endurance Am. Specialty Ins. Co. v. Utica First Ins. Co.*, 132 A.D.3d 434 (1st Dept. 2015) .......................................................................................................... 16

*Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136 (2d Cir. 2014) ........ 9

*Fieldston Prop. Owners Assn., Inc. v Hermitage Ins. Co., Inc.*, 16 N.Y.3d 257 (2011) ............................................................................................ 4

*Fitzpatrick v American Honda Motor Co.*, 78 N.Y.2d 61 (2007); .................. 4,5,13,14

*Hanover Ins. Co. v Philadelphia Indem. Ins. Co.*, 159 A.D.3d 587 (1st Dept. 2018). ................................................................................................................ 11

*Harmon v. Alfred Peats Co.*, 243 N.Y. 473 (1926).............................................. 14

*Holban Cacho v. Carthage 124th, L.P. and Key Developers Inc.* in New York State Supreme Court, Bronx County (Ind. No. 814517/2021)............................. 2

*Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608 (2d Cir. 2001). .13,14,15

*Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137 (2d Cir. 2004) 4

*Liberty Mut. Ins. Corp. v. N.Y. Marine & Gen. Ins. Co.*, 505 F. Supp. 3d 260 (S.D.N.Y. 2020)...................................................................................... 7

*NGM Ins. Co. v. MGC Design & Constr. Corp.* (237 A.D.3d 958 (2d Dept. 2015 .................................................................................................. 14

*Ohio Sec. Ins. Co. v. Travelers Indem. Co.*, 19-cv-1355 (AJN), 2021 U.S. Dist. LEXIS 38292 (S.D.N.Y. 2021.................................................................. 12

*Pioneer Cent. Sch. Dist. v. Preferred Mut. Ins. Co.*,

165 A.D.3d 1646 (4th Dept. 2018 ...................................................... 12

*Ortega v. Puccia*, 57 A.D.3d 54 (2d Dept. 2008)................................................. 9

*Roman Catholic Diocese of Brooklyn v. Nat'l Union Fire. Ins. Co. of Pittsburgh, PA.*,
21 N.Y.3d 139 (2013)...................................................................... 16

*Sierra v. 4401 Sunset Park, LLC*, 24 N.Y.3d 514 (2014). ..............................16,17

*Sturges Mfg. Co. v. Utica Mut. Ins. Co.*, 37 N.Y.2d 69 (1974) .......................13,14

*Thompson v. Grumman Aerospace Corp.*, 78 NY2d 553 (1991) ..................... 7,13

*Regal Constr. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
 15 N.Y.3d 34 (2010.................................................................. 11

*W & W Glass Sys., Inc. v Admiral Ins. Co.*, 91 A.D.3d 530 (1st Dept 2012)..... 11

iii

## INTRODUCTION

In this insurance coverage action, Defendant Arch Specialty Insurance Company ("Arch") asks the Court to dismiss Plaintiff Ohio Security Insurance Company's Complaint by relying on extrinsic evidence to defeat its obligation to defend Trogon Interiors, Inc. ("Trogon") as an additional insured in an underlying lawsuit resulting from a construction accident, while ignoring the factual pleadings in that action which trigger Trogon's entitlement to such coverage. Because Arch's Motion rests on arguments inconsistent with well-settled New York law governing insurance coverage disputes, and the pleadings in the underlying suit raise a reasonable possibility that Arch will be required to indemnify Trogon, Ohio Security opposes Arch's Motion and moves for summary judgment declaring that Arch must defend and indemnify Trogon.

## FACTS & PROCEDURAL HISTORY

### 1. *Ohio Security's Policy.*

Ohio Security issued a commercial general liability policy (No. BLS 62491041) to Trogon Interiors, Inc. ("Trogon") that provides coverage for the policy period December 31, 2020 to December 31, 2021. Holmes Decl., Ex. 1

### 2. *The Arch Policy.*

Arch issued Defendant JJAA Builders Corp. ("JJAA") a commercial general liability policy (No. AGL0063090-00) with a $1 million per-occurrence limit for the period of December 14, 2020, to December 14, 2021 ("Policy"). Roberto Decl., Ex. 4. The Policy contains an additional insured endorsement which provides:

> SECTION II – WHO IS AN INSURED is amended to include any person or organization for whom you are performing operations when you and such person or organization have agreed in a written contract or agreement signed and dated prior to the loss for which coverage is sought that such person or organization be added as an additional insured on your policy, but only

1

with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of your subcontractors:

a. In the performance of your ongoing operations or "your work", including your "completed operations"; or

b. In connection with your premises owned by or rented to you.

The person or organization does not qualify as an Additional Insured with respect to any independent act(s) or omission(s) of such person or organization.

### 3. *The JJAA-Trogon Agreement.*

On June 6, 2021, Trogon and JJAA entered into a written agreement with respect to a job location at "224 W 124th St" in which JJAA agreed to obtain commercial general liability insurance naming Trogon, as well as the site's owner and all other entities Trogon was required to indemnify and hold harmless as a result of JJAA's work, as additional insureds. Roberto Decl., Ex. 3. JJAA's coverage for Trogon was to be primary and non-contributory with any insurance that Trogon had. Roberto Decl., Ex. 3.

### 4. *The Underlying Action.*

Holban Cacho ("Cacho") commenced an action captioned *Holban Cacho v. Carthage 124th, L.P. and Key Developers Inc.* in New York State Supreme Court, Bronx County (Ind. No. 814517/2021) ("Underlying Action"). Roberto Decl., Ex. 5. In his complaint, Cacho alleges that on October 15, 2021 he sustained injuries at a construction site when he fell from a ladder and asserts causes of action against the first-party defendants (the site's owner and general contractor) under New York Labor Law § 240 (1), among others. *Id.* Cacho further alleges the defendants failed to provide him with "proper and safe elevated working surfaces, scaffolds and ladders, so fixed, secured and/or maintained and braced so as to prevent [him] from falling." Roberto Decl., Ex. 5, ¶ 32.

2

The first-party defendants, Carthage 124th, L.P. ("Carthage") and Key Developers Inc. ("Key") subsequently impleaded Big Apple Designers Inc. ("Big Apple"), which in turn impleaded Trogon. Roberto Decl., Exs. 7, 9, 11. Each of those defendants and third-party defendants subsequently commenced additional third-party actions against JJAA. *Id.* Those third-party complaints allege that "JJAA provided [Cacho] with material and equipment to use while performing work" at the site, and that Cacho was using a ladder "that had been furnished to him by JJAA" on the date of the alleged accident. Roberto Decl., Ex. 11, ¶¶ 11–12. Additionally, they plead that JJJA's failure to maintain and repair its equipment caused the accident. Roberto Decl., Ex. 9, ¶ 28. Finally, it was alleged that Cacho worked for JJAA and sustained his injuries while under that entity's supervision and control. Roberto Decl., Ex. 7, ¶ 19; Ex. 9, ¶¶ 10–12; Ex. 11, ¶¶ 8–10. JJAA joined issue and did not deny the truth of these allegations. Roberto Decl., Ex. 8, ¶ 4; Ex. 10, ¶¶ 4, 7; Ex. 12, ¶ 3.

Ohio Security has been providing a defense to Trogon in the Underlying Action. Holmes Decl., ¶ 9.

### 5. *Tender and Denial.*

By letter dated June 16, 2023, a letter was sent on behalf of Ohio Security and Trogon (as well as Carthage, Key, and Big Apple) to JJAA and its insurance broker, Stern Agency, tendering the defense and indemnity of those parties in the Underlying Action. Holmes Decl., Ex. 3. By email dated July 24, 2023, Ohio Security again tendered the defense and indemnity of those parties to Arch. Holmes Decl., Ex. 4.

Arch denied the tender by letter dated July 31, 2023, refusing to provide coverage because none of the tendering parties were named first-party defendants and claiming there was no written agreement requiring additional insured coverage. Holmes Decl., Ex. 5. However, Arch only sent its denial to the tendering insurer

3

without copies to any of the parties to the Underlying Action, including Trogon. Holmes Decl., Ex. 5.

### 6. This Action.

Ohio Security commenced this action seeking, among other things, a declaration that Arch is obligated to defend and indemnify Trogon in the Underlying Action as an additional insured under the Policy, along with reimbursement of defense costs that Ohio Security has incurred defending the Underlying Action. Roberto Decl., Ex. 1.

### ARGUMENT

### POINT I

### (IN SUPPORT OF OHIO SECURITY'S SUMMARY JUDGMENT MOTION)

**THERE ARE NO TRIABLE ISSUES PRECLUDING SUMMARY JUDGMENT IN FAVOR OF OHIO SECURITY.**

### A. Ohio Security is entitled to summary judgment declaring that Arch has a duty to defend Trogon in the Underlying Action.

The third-party pleadings in the Underlying Action unambiguously allege that JJAA supplied the ladder from which Cacho allegedly fell, and it is undisputed that JJAA agreed to" procure insurance under which Trogon would be added as an additional insured. Ohio Security is therefore entitled to summary judgment declaring that Arch has a duty to defend and indemnify Trogon in the Underlying Action.

### 1. New York law on an insurer's duty to defend.

An "insurer's duty to defend its insured 'arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy.'" *Fieldston Prop. Owners Assn., Inc. v Hermitage Ins. Co., Inc.*, 16 N.Y.3d 257, 264 (2011), *quoting Fitzpatrick v American Honda Motor Co.*, 78 N.Y.2d 61, 65 (2007); *see also Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363

4

F.3d 137, 144 (2d Cir. 2004). "If the allegations of the complaint are ambiguous or incomplete, the insurer is nevertheless obligated to defend if the case is potentially within the coverage of the policy." *U.S. Fid. & Guar. Co. v. Exec. Ins. Co.*, 893 F.2d 517, 519 (2d Cir. 1990).

While New York courts have made clear that an insurer's duty to defend can also be triggered by extrinsic evidence, an insurer cannot point to materials outside the pleadings to defeat coverage in the first instance. *Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131 (2006) (observing that a duty to defend remains even if facts outside the pleadings indicate a claim may be meritless or not covered); *Fitzpatrick*, 78 N.Y.2d at 65–67.

### 2. Pleadings in the Underlying Action create a reasonable possibility that Trogon will be entitled to indemnity under the Policy.

The Policy's additional insured endorsement amends the agreement to include as an insured "any person or organization for whom you are performing operations when you and such person or organization have agreed in a written contract or agreement signed and dated prior to the loss for which coverage is sought that such person or organization be added as an additional insured on your policy, but only with respect to liability for 'bodily injury' . . . caused, in whole or in part, by your acts or omissions or the acts or omissions of your subcontractors: (a) In the performance of your ongoing operations or 'your work', including your 'completed operations' . . . ." Roberto Decl., Ex. 4, AIG000012.

Here, Trogon and JJAA specifically entered into a contract under which JJAA agreed to obtain insurance under which Trogon would be named as an additional insured. Roberto Decl., Ex. 6, AIG100034.[1] As a result, the only remaining question with respect to Arch's duty to defend Trogon is whether the pleadings in the

---

[1] Notably, Arch relies on that agreement in its Motion (Doc. No. 40, p. 10 ("Only Trogon entered into a contract with JJAA.")).

Underlying Action raise the possibility that Cacho's alleged accident was "caused, in whole or in part," by JJAA's acts in the course of its work at the Site. The New York Court of Appeals has held that phrase—"caused, in whole or in part, by your acts or omissions"—describes proximate causation. *Burlington Ins. Co. v. NYC Tr. Auth.*, 29 N.Y.3d 313, 317 (2017). However, the Court has also made clear that such contractual language does not, by itself, "incorporate[] a negligence requirement" (*id.* at 324) and can instead simply refer to some "other actionable deed" (*id.* at 321).[2] The third-party pleadings in the Underlying Action meet this standard.

In his complaint, Cacho alleged that on the date of the alleged accident he was "engaged in the performance of construction, renovation, demolition, painting, repair and/or alterations" at the Site and that the named defendants, as well as their "agents, servants and/or employees," had the duty to provide him with "a safe place to work." Roberto Decl. Ex. 5, ¶¶ 28, 29). However, Cacho alleges he fell from a ladder and sustained injuries because the defendants failed to provide him with a safe workplace. *Id.*, ¶ 31.

In turn, JJAA was impleaded under the Third, Fourth, and Fifth Third-Party Complaints. Roberto Decl. Exs. 7, 9, 11. Those third-party complaints set forth multiple bases on which JJAA's acts or omissions could have proximately caused Cacho's accident. First and foremost, it is alleged that "JJAA provided [Cacho] with material and equipment to use while performing work" at the site, and that Cacho was using a ladder "that had been furnished to him by JJAA" on the date of the alleged accident. Roberto Decl., Ex. 11, ¶¶ 11–12. Similarly pleaded is the allegation that JJAA's failure to maintain and repair its equipment caused the accident. Roberto

---

[2] In the Underlying Action, Cacho has asserted a cause of action based on a violation of New York Labor Law § 240 (1), which protects workers from gravity-related worksite incidents. Common-law negligence is not a requirement for recovery under Labor Law § 240 (1) because it "establishes absolute liability for a breach which proximately causes an injury." *Blake v. Neighborhood Hous. Servs. of N.Y. City, Inc.*, 1 N.Y.3d 280, 289 (2003) (quotes and citation omitted).

Decl., Ex. 9, ¶ 28. Additionally, the third-party plaintiffs also allege Cacho worked for JJAA and sustained his injuries while under that entity's supervision and control. Roberto Decl., Ex. 7, ¶ 19; Ex. 9, ¶¶ 10–12; Ex. 11, ¶¶ 8–10. Notably, JJAA did not deny the truth of these allegations. Roberto Decl., Ex. 8, ¶ 4; Ex. 10, ¶¶ 4, 7; Ex. 12, ¶ 3.

On their face, these pleadings raise a reasonable possibility that JJAA proximately caused Cacho's alleged injuries because it provided an improperly maintained subject ladder *or* because Cacho's accident occurred when he was working for JJAA. In either case, JJAA's alleged acts or omissions were a proximate cause of the accident for which Cacho seeks to hold the first-party defendants absolutely liable. *See Blake*, 1 N.Y.3d at 289; *see also Pardo v. Bialystoker Ctr.*, 308 A.D.2d 384, 385 (1st Dept. 2003) ("There may be more than one proximate cause of a workplace accident."); *Liberty Mut. Ins. Corp. v. N.Y. Marine & Gen. Ins. Co.*, 505 F. Supp. 3d 260, 272 (S.D.N.Y. 2020) ("[T]he concept of proximate cause embraces the possibility of multiple causes of an injury.").

Even if the Court were to consider Cacho's Bill of Particulars stating he worked for Big Apple (Doc. No. 39-5), the statement is irrelevant for purposes of defense obligations: the allegation that JJAA provided the subject ladder provides an independent basis on which JJAA's acts or omissions could have proximately caused the accident. In any event, Cacho's Bill of Particulars points as much to a legal uncertainty as one of fact. For instance, New York law recognizes that even if a worker is on the payroll of a particular employer he can also be deemed a "special employee," meaning he was "transferred for a limited time . . . to the service of another" company. *Bautista v. David Frankel Realty, Inc.*, 54 A.D.3d 549, 550 (1st Dept. 2008), *quoting Thompson v. Grumman Aerospace Corp.*, 78 NY2d 553, 557 (1991). The third-party pleadings themselves raise the possibility that Cacho was a "borrowed or special employee" (Roberto Decl., Ex. 11, ¶ 17) and note that JJAA "was

in the business of providing laborers to perform construction work" (Roberto Decl., Ex. 9, ¶ 5).

For these reasons, Ohio Security respectfully submits it is entitled to summary judgment declaring that Arch has a duty to defend and indemnify Trogon as an additional insured under the Policy.

## POINT II

### (IN OPPOSITION TO ARCH'S SUMMARY JUDGMENT MOTION)

**ARCH HAS NOT DEMONSTRATED ITS ENTITLEMENT TO SUMMARY JUDGMENT.**

*A. Arch fails to demonstrate the pleadings in the Underlying Action do not raise a reasonable possibility of coverage in favor of Trogon.*

At the outset, Ohio Security is entitled to judgment as a matter of law for the reasons set forth in Point I. Arch's summary judgment motion seeking a declaration that it has no duty to defend Trogon should therefore be denied as academic.

If the Court does not grant Ohio Security's Motion, then Arch's Motion should also be denied because it has not demonstrated its entitlement to judgment as a matter of law. Arch itself acknowledges that Trogon is entitled to coverage under the Policy as an additional insured if the pleadings raise a reasonable possibility that Cacho's accident was "caused in whole or in part by JJAA" (Doc. No. 40, p. 11). Moreover, by citing *Burlington Ins. Co.* and arguing that Ohio Security must show JJAA was "*a* cause of the accident" (Doc. 40, p. 11) (emphasis added), Arch further acknowledges that JJAA's actions did not need to be the *sole* cause of the alleged accident. However, Arch's Motion does not show the pleadings in the Underlying Action fail to raise a reasonable possibility of coverage based on that standard; instead, its Motion rests on a series of misconstructions and red herrings.

8

### 1. *Cacho's allegation that Carthage and Key caused his accident is irrelevant.*

Arch's first contention that Cacho's first-party complaint "does not allege that JJAA was a cause of Cacho's injury," "does not even reference JJAA[,] and alleges that Cacho's injury was caused by Carthage and Key" misses the mark.

If Cacho worked for JJAA as alleged in the third-party pleadings, the exclusive remedy provisions of the Workers' Compensation Law would bar him from directly asserting any claims against his employer. However, even if Cacho believes he only worked for Big Apple, his decision to assert claims only against the Site's owner (Carthage) and general contractor (Key) is simply a reflection that those are the proper defendants for a claim brought under New York Labor Law § 240 (1). *See Ortega v. Puccia*, 57 A.D.3d 54, 58 (2d Dept. 2008) ("The duties articulated in Labor Law § 240 are nondelegable, and liability is absolute as to the general contractor or owner when its breach of the statute proximately causes injuries.").

### 2. *Arch overlooks or misconstrues the pleading that JJAA provided the subject ladder.*

Arch also attempts to avoid the significance of the allegation that JJAA provided the subject ladder; first, by claiming the pleading is conclusory, and then by arguing it does not trigger Arch's defense obligation because there is no allegation that JJAA was negligent. Each argument is misplaced.

The Motion asserts the "third-party allegations against JJAA . . . are entirely conclusory and do not allege anything JJAA did or did not do that caused Cacho's injury." (Doc. No., p. 12). Yet, two sentences later, Arch references the "allegation that JJAA provided Cacho the ladder" (*id.*) without offering any explanation for why that pleaded fact can be ignored as a conclusory assertion. *See Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 142 (2d Cir. 2014) ("[T]he analysis depends on the facts which are pleaded, not the conclusory assertions." (quoting *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 162 (1992)). Instead, Arch dismisses the significance of

9

that pleading by claiming it does not show there was "anything wrong" with the ladder.

However, Cacho pled he fell from the ladder and sought to recover from Carthage and Key by alleging they failed to provide him with "proper and safe elevated working surfaces, scaffolds and ladders, so fixed, secured and/or maintained and braced so as to prevent the plaintiff from falling." Roberto Decl., Ex. 5, ¶ 32. The third-party pleadings subsequently alleged JJAA is liable for the accident because it provided the subject ladder that Plaintiff alleges was not properly secured or maintained, and that JJAA failed to properly repair and maintain the ladder. Roberto Decl., Ex. 9, ¶ 28; Ex. 11, ¶¶ 11–12. In short, Arch's contention that there are no pleaded facts raising the possibility of a defect with a JJAA-provided ladder is simply incorrect.

Even assuming *arguendo* the pleadings did not suggest the ladder had a defect, that would still not allow Arch to disclaim coverage. As previously noted, the New York Court of Appeals has held that while "caused, in whole or in part" means proximate causation, it does not necessarily incorporate a negligence standard. *Burlington Ins. Co.*, 29 N.Y.3d at 324. Thus, the pleading that JJAA provided the ladder from which Cacho claims he fell would raise a reasonable possibility that the company's acts or omissions were a proximate cause of the accident even in the absence of Cacho's pleadings indicating there was a defect with the ladder.

### 3. Even if the pleadings did not allege that JJAA provided the subject ladder, the various allegations as to the identity of Cacho's employer at most raise an ambiguity that must be resolved in favor of Trogon and Ohio Security.

Because the pleadings raise a reasonable possibility that JJAA's actions were a proximate cause of the accident because it provided the subject ladder, Arch's suggestion that the identity of Cacho's employer is dispositive of its defense obligation is incorrect. Indeed, the additional insured endorsement does not contain any

10

language suggesting its proximate cause condition is limited to JJAA's "acts or omissions" vis-à-vis one of its employees.

Arch clearly and conveniently confounds the interpretation of the additional insured endorsement with that of an older version. An older version of a different additional insured endorsement uses the term "arising out of," which has been held to accept an employment relation as a sufficient causal nexus (*see Regal Constr*. Corp. *v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 15 N.Y.3d 34, 38 (2010)) and does not require a showing of negligence. *W & W Glass Sys., Inc. v. Admiral Ins. Co.*, 91 A.D.3d 530, 531 (1st Dept 2012). In other words, employment status alone is sufficient to trigger additional insured coverage under the former endorsement using "arising out of." However, the expression "caused in whole or in part by" excludes employment as sufficient nexus. *Hanover Ins. Co. v Philadelphia Indem. Ins. Co.*, 159 A.D.3d 587 (1st Dept. 2018).

In any event, the third-party pleadings regarding JJAA's employer relationship provide a separate basis for finding there is a reasonable possibility that its acts were a proximate cause of the accident. The third-party plaintiffs allege Cacho worked for JJAA and sustained his injuries while under that entity's supervision and control. Roberto Decl., Ex. 7, ¶ 19; Ex. 9, ¶¶ 10–12; Ex. 11, ¶ 8–10. It was also alleged that JJAA was "responsible for all safety precautions and procedures for the work being performed by its employees," including Cacho. Roberto Decl., Ex. 9, ¶¶ 23–24. At the same time, Cacho alleged the first-party defendants—as well as their "*agents*"—were "negligent, reckless and careless" in their "supervision" and "direction" at the worksite. Roberto Decl., Ex. 5, ¶ 32 (emphasis added). Taken together, these specific factual allegations point to a reasonable possibility that JJAA's acts or omissions were a proximate cause of the accident—if not because it provided the ladder that allegedly proved dangerous, then because it negligently supervised and controlled Cacho's work.

11

This case is directly in accord with the decisions cited in Arch's Motion stating that an additional insured may obtain is entitled to insurance coverage if the pleadings allege facts indicating the additional insured's acts caused or contributed to an accident (Doc. No. 40, p. 12 (citing *Certain Underwriters at Lloyd's, London v. Travelers Cas. Ins. Co. of Am.*, 664 F. Supp. 3d 288 (E.D.N.Y. 2023); *Ohio Sec. Ins. Co. v. Travelers Indem. Co.*, 19-cv-1355 (AJN), 2021 U.S. Dist. LEXIS 38292 (S.D.N.Y. 2021); *Pioneer Cent. Sch. Dist. v. Preferred Mut. Ins. Co.*, 165 A.D.3d 1646 (4th Dept. 2018))). For instance, in *Certain Underwriters at Lloyd's, London*, the district court indicated an allegation that a named insured was responsible for an injured worker's safety could satisfy the condition in an additional insured endorsement that the named insured's actions must have been a proximate cause of an accident. *See* 664 F. Supp. 3d at 295 (indicating that allegation that named insured was responsible for worker's safety presented a "closer question" as to its ability to trigger proximate cause condition in additional insured endorsement but resolving the motion on other grounds).

Another district court decision from this District, not addressed in Arch's Motion, is even more analogous to this case. In *City of New York v. Harleysville Ins. Co.* (682 F. Supp. 3d 335 (S.D.N.Y. 2023)), this Court determined there was a reasonable possibility of coverage for the City of New York as an additional insured based on an underlying complaint alleging that the City and "its agents" had a duty to maintain the safety of a particular location. 682 F. Supp. 3d at 340. This Court determined the pleadings raised a reasonable possibility that the named insured, a contractor, was acting as the City's agent and the injury-producing event was the result of the contractor's negligence. *Id.* at 340–341. "While neither of these facts have yet been proven, the City is not obligated to *prove* they are entitled to coverage at this stage in order to invoke [the insurer's] duty to defend." *Id.* at 341.

12

Again, Cacho pled his accident was caused by the negligence of the first-party defendants *or* their agents. Roberto Decl., Ex. 5, ¶¶ 32, 34. Similar to *Harleysville Ins. Co.*, the multiple third-party pleadings alleging that JJAA assumed responsibility for Cacho's safety at the site; controlled and supervised his work; and provided him with the equipment he was using at the time of the incident all raise the "reasonable possibility" that JJAA was an agent of the first-party defendants.

Moreover, Cacho's testimony that he was working for Big Apple does not eliminate all reasonable possibility that he could be deemed a JJAA employee. As noted above, a worker is on the payroll of one employer can be the "special employee" of another. *See Thompson*, 78 NY2d at 557; *Bautista*, 54 A.D.3d at 550. At most, Cacho's contention points to a factual and legal ambiguity that must be resolved in favor of the insured (*i.e.*, Trogon) until the ambiguity is resolved, requiring denial of Arch's Motion. *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 622 (2d Cir. 2001).

### 4. *Arch cannot rely on extrinsic evidence to avoid its duty to defend Trogon.*

Finally, to the extent Arch relies on extrinsic evidence—namely, Cacho's deposition testimony (Doc. No. 40, pp. 12–15)—to suggest it proves that Cacho was not working for JJAA at the time of the accident, the Motion must be denied as a matter of law.

An insurer cannot point to extrinsic evidence to defeat coverage in the first instance. *Cook*, 7 N.Y.3d at 137; *Fitzpatrick*, 78 N.Y.2d at 65–67. Arch's Motion asks the Court to ignore these principles by pointing to readily distinguishable case law.

In *Sturges Mfg. Co. v. Utica Mut. Ins. Co.* (37 N.Y.2d 69 (1974)), the court declared an insurer was obligated to provide a defense in an underlying action without referencing the use of materials outside the pleadings. To the contrary, the issue before the court was whether policy exclusions allowed the insurer to disclaim

13

coverage based on the pleadings and bill of particulars alone. *See* 37 N.Y.2d at 72–74. Thus, *Sturges Mfg. Co.* is inapposite and Arch's citation to dicta simply noting that an insurer's coverage obligations are not "interminable" does not provide a basis for this Court to disregard the above referenced case law regarding extrinsic evidence (*id.* at 74)

*NGM Ins. Co. v. MGC Design & Constr. Corp.* (237 A.D.3d 958 (2d Dept. 2015)), which Arch says is "instructive" (Doc. No. 40, p. 14), is also not persuasive. In that case, an insurer providing a defense in an underlying action affirmatively commenced a declaratory judgment action to terminate its coverage obligations. 237 A.D. 3d at 958–959. The coverage was based on pleadings alleging the claimant had sustained a "grave injury" within the meaning of New York Workers' Compensation Law § 11. *Id.* at 959. After the claimant was examined by three medical experts who each opined he did not sustain a "grave injury," the insurer sought to terminate coverage based on their opinions. *Id.* at 960. However, the decision does not include any analysis regarding the use of the experts' opinions to terminate the insurer's defense obligation, let alone purport to disregard the Court of Appeals' decisions in *Fitzpatrick* or *Cook*.

And in *Hugo Boss Fashions, Inc.*, the Second Circuit merely observed that New York law allows an "insurance company to extricate itself early by demanding a bill of particulars" to clarify any ambiguous pleadings. 252 F.3d at 622. However, as Arch acknowledges elsewhere in its brief (Doc. No. 40, p. 11), a bill of particulars is an amplification of the pleadings. *Harmon v. Alfred Peats Co.*, 243 N.Y. 473 (1926) ("It has many times been held that a bill of particulars is an amplification of a pleading."). Thus, *Hugo Boss Fashions, Inc.* is irrelevant to whether an insurer may use extrinsic evidence, such as a party's deposition testimony, to terminate its defense obligations.

In any event, Arch fails to reference the other extrinsic evidence which, viewed in the light most favorable to Ohio Security, at least raises triable issues of fact which

14

should preclude summary judgment in Arch's favor. *See Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 98 (2d Cir. 2003) (nothing that on a Rule 56 summary judgment motion, all evidence is viewed "in the light most favorable to the non-moving party").

Although Cacho testified that he was working for Big Apple, an accident report disclosed in the Underlying Action, consistent with Cacho's testimony that he cut himself on debris when he fell, states that he was working for JJAA. Roberto Decl., Ex. 6; Ex. 13, p. 146 (testimony that he cut his finger on metal debris). However, Cacho also testified he was told he was working for JJAA and that he did not receive any pay in connection with the date of the accident. Roberto Decl., Ex. 13, pp. 138–139. Finally, Cacho also testified that he did not know who provided the ladder because he "just used it," taking it from where he found it on the Site's fifth floor, even though no one told him to use it. Roberto Decl., Ex. 13, pp. 45–46. Thus, Cacho's deposition testimony, viewed in the light most favorable to Ohio Security, at least points questions of fact—as to whether Cacho was working for JJAA at the time of the accident and/or whether JJAA provided the subject ladder—which compel Arch to provide a defense until it is resolved. *Hugo Boss Fashions, Inc.*, 252 F.3d at 622.[3]

### 5. Arch does not show it is entitled to summary judgment based on untimely notice.

Finally, Arch's argument that it received late notice of the Underlying Action is unavailing. Arch did not raise that issue in its disclaimer letter (which, in any event, is defective on its face) and fails to offer any non-conclusory explanation or testimony for how it was prejudiced by the purported late notice of 49 days.

---

[3] Arch attempts to minimize the significance of the accident report and bolster Cacho's testimony that he was "told" to say he worked for JJAA, not Big Apple, by pointing to a criminal case involving Big Apple (Doc. No. 40, pp. 6, 14). However, to the extent there is any inconsistency between the accident report and Cacho's testimony, that merely raises a question of witness credibility that should be left to a jury. *See Dillon v. Morano*, 497 F.3d 247, 254 (2d Cir. 2007); *see also Hugo Boss Fashions, Inc.*, 252 F.3d at 622 (noting that any factual ambiguity must be viewed in an insured's favor in an insurance coverage dispute until such time as the ambiguity is resolved).

Insurance Law § 3420 (d) (2) provides that if an insurer seeks to disclaim coverage for a bodily injury claim within New York State, "it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant." An insurer's failure to send such a letter to the interested parties renders the disclaimer defective as a matter of law. *Sierra v. 4401 Sunset Park, LLC*, 101 A.D.3d 983, 984–985 (2d Dept. 2012), *affd.* 24 N.Y.3d 514 (2014). Additionally, the "[f]ailure to raise a ground for disclaimer 'as soon as is reasonably possible' precludes an insurer from later asserting it as a defense." *Roman Catholic Diocese of Brooklyn v. Nat'l Union Fire. Ins. Co. of Pittsburgh, PA.*, 21 N.Y.3d 139, 146 (2013).

Here, Arch's July 31, 2023 disclaimer letter did not reference the timeliness of Trogon's tender as a basis for its denial even though Arch now argues Trogon's notice was "late as a matter of law" (Doc. No. 40, p. 16). Moreover, by referencing the Underlying Action's publicly available docket, Arch should have known that one of the other tendering parties (Big Apple) knew of the accident and accident no later than May 16, 2023 when it joined issue in the Underlying Action. Roberto Decl., Ex. 14. Thus, it was more than "reasonably possible" for Arch to have asserted late notice as a basis for denying coverage in its July 31, 2023. *Roman Catholic Diocese of Brooklyn*, 21 N.Y.3d at 146. Because it did not, it is now barred from doing so. *Id.* Further, to the extent Arch may argue that it had no obligation to assert other grounds for its disclaimer in the July 31, 2023 correspondence because it did not have a copy of the Trogon-JJAA contract which could trigger its obligation to defend Trogon as an additional insured, its actual possession of that agreement was irrelevant to Arch's ability to assert untimely notice as a separate basis for its disclaimer. *Endurance Am. Specialty Ins. Co. v. Utica First Ins. Co.*, 132 A.D.3d 434, 436 (1st Dept. 2015) (holding that insurer should have disclaimed coverage on grounds known to it at the time of an initial tender, even though the insurer had not yet received a

16

copy of the written contract requiring that a particular party be named as an additional insured).

Additionally, even if Arch had raised untimely notice as a defense in its disclaimer letter, its July 31, 2023 disclaimer was defective as a matter of law. Arch sent its letter to Ohio Security, with copies to JJAA and its insurance broker, but did not copy Trogon, or any of the underlying parties as required by statute. Thus, Arch's letter did not satisfy the notice requirements under Insurance Law § 3420 (d) (2). *Sierra v. 4401 Sunset Park, LLC*, 24 N.Y.3d 514, 518–519 (2014).

In any event, pursuant to Insurance Law §§ 3420 (a) (5) and 3420 (c) (2) (A), Arch cannot disclaim coverage based on untimely notice unless it meets its burden of proving prejudice "as a result" of such late notice. Arch contends the notice it received on June 29, 2023 was untimely because "Trogon was aware of the accident and lawsuit no later than the May 11, 2023 tender letter from Big Apple to Trogon" (Doc. No. 40, p. 16).

To meet its burden of proof to disclaim based on Trogon's purported late notice, Arch would need to show how it was prejudiced by not receiving notice sometime earlier than June 29, 2023—but still later than May 11, 2023 when Trogon learned of the claim. Arch's Motion simply does not provide any such evidence. Instead, Arch only points to its efforts to locate JJAA several months *after* its July 31, 2023 disclaimer letter (Doc. No. 40, pp. 16–17; Doc. Nos. 39-15, 39-16, 39-17, 39-18, 39-19). Ohio Security respectfully submits these documents are insufficient to eliminate all triable issues of fact as to Arch's claim of prejudice "as a result" of Trogon's purported late notice (*e.g.*, whether Arch could have had any more success contacting JJAA if it received notice on May 11, 2023).

To the extent Arch argues that it was prejudiced because it cannot locate its insured, JJAA, then that argument is equally illogical for two reasons. First, whether or when Arch could or could have located JJAA is irrelevant to anything within Ohio

17

Security's influence.  Second, Arch's lack of cooperation issues with JJAA has no impact on its obligation to provide additional insured coverage to Trogon because Arch's own Policy requires that Arch treat each insured separately from whom a claim is made.  *See* Arch Policy, AIG00057. *Citizens Ins. Co. of America v. Illinois Union Ins. Co.*, 105 A.D.3d 679 (1st Dept. 2013) (holding each individual additional insured, although not named as an insured in the policy must be treated as if separately covered by the policy); *233 East 17th Street, LLC v. L.G.B. Development, Inc.*, 78 A.D.3d 930 (2d Dept. 2010) ("[T]hat the primary insured had breached a condition precedent under the policy which voided coverage, was not sufficient for disclaiming coverage as to the [additional insured because] each individual insured must be treated as if it had a separate policy of its own with the insurer.").  Thus, whether JJAA failed to give timely notice or failed to cooperate is irrelevant to the timely notice provided by Ohio Security.

## CONCLUSION

For these reasons, Ohio Security requests that the Court (1) grant its Motion for summary judgment for a declaration that Arch has a duty to defend Trogon in the Underlying Action; (2) deny Arch's Motion for summary judgment in its entirety; and (3) award such other relief as the Court deems just and proper.

**GERBER CIANO KELLY BRADY LLP**

By: */s/ Joanna M. Roberto*
    Joanna M. Roberto
    NY State Bar No. 2933042
    PO Box 1060
    Buffalo, NY 14201
    Telephone: (516) 329-9403
    jroberto@gerberciano.com

## <u>CERTIFICATION OF WORD COUNT</u>

      I hereby certify that the total number of words in this Memorandum of Law, exclusive of tables and this certificate, is 5,932.

           **GERBER CIANO KELLY BRADY LLP**

           By: */s/ Joanna M. Roberto*
                Joanna M. Roberto
                NY State Bar No. 2933042
                PO Box 1060
                Buffalo, NY 14201
                Telephone: (516) 329-9403
                jroberto@gerberciano.com

19