UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
OHIO SECURITY INSURANCE COMPANY,

                Plaintiff,                              Civ. No. 1:24-cv-07128

     - against -

ARCH SPECIALTY INSURANCE COMPANY

                Defendant.
------------------------------------------------------------------X

**PLAINTIFF OHIO SECURITY INSURANCE COMPANY'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

**ARCH FAILS TO SHOW THERE IS NO POSSIBILITY THAT TROGON IS ENTITLED TO COVERAGE**...........................................1

**A.  Arch Is Less Than Candid About Its Cited Authority Regarding Use Of Extrinsic Evidence To Avoid A Duty to Defend** .......................................................1

**B.  Arch Fails To Show There is No Reasonable Possibility That The Subject Ladder Was a Proximate Cause of Cacho's Accident** ...............................................................................3

**C.  Cacho Testified That He Had No Idea Who Provided The Ladder** ...............................................................................4

**D.  The Pleadings Raise a Reasonable Possibility That JJAA's Failure To Meet Its Safety Obligations Was a Proximate Cause Of The Accident**.............................................................5

**E. Arch Cannot Avoid Its Duty to Defend Trogon Based On Its Misplaced Untimely Notice Argument** ...............................................7

**CONCLUSION** .......................................................................9

## TABLE OF AUTHORITIES

**Cases**                                                                                  **Pages**

*Arch Specialty Ins. Co. v. Lineal Contr. Corp.*, 2024 N.Y. Slip Op. 30667(U),
 2024 WL 919680, 2024 N.Y. Misc. LEXIS 1003 (Sup. Ct. N.Y. County 2024) ........... 8

*Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131 (2006) ..................................... 1

*Bautista v. David Frankel Realty, Inc.*, 54 A.D.3d 549 (1st Dept. 2008)) .................... 6

*Catholic Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*,
      21 N.Y.3d 139 (2013) .................................................................................... 7

*City of New York v. Harleysville Ins. Co.* (682 F. Supp. 3d 335 (S.D.N.Y. 2023) ........ 7

*Fitzpatrick v. American Honda Motor Co.*, (78 N.Y.2d 61 (2007) .......................... 1,2,3

*Hugo Boss Fashions, Inc. v. Fed. Ins. Co.* (252 F.3d 608 (2d Cir. 2001)) .................. 2,3

*Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137 (2d Cir. 2004) ........ 1

*Magen v. Hartford Fire Ins. Co.* (64 A.D.3d 266 (1st Dept 2009)) .............................. 8

*NGM Ins. Co. v. MGC Design & Constr. Corp.* (237 A.D.3d 958 (2d Dept. 2015).... 1,2

*Ohio Sec. Ins. Co. v. Travelers Indem. Co.* (19-cv-1355 (AJN),
         2021 WL 797670, 2021 U.S. Dist. LEXIS 38292 (S.D.N.Y. 2021) .................... 6

*Roman Catholic Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*,
21 N.Y.3d 139 (2013) ...................................................................................... 7

*Travelers Indem. Co. v. United States Fire Ins. Co.*, 1:22-cv-6440-MKV,
         2024 WL 295355, 2024 U.S. Dist. LEXIS 13610, *3 (S.D.N.Y. 2024) .............. 8

*Turturro v. City of New York*, 28 N.Y.3d 469, 483 (2016) ........................................... 3

## REPLY ARGUMENT

## POINT I

**ARCH FAILS TO SHOW THERE IS NO POSSIBILITY THAT TROGON IS ENTITLED TO COVERAGE.**

### A. Arch is less than candid about its cited authority regarding use of extrinsic evidence to avoid a duty to defend.

Arch's Opposition rests in large part on the contention that New York law allows the Court to consider a claimant's deposition testimony to *avoid*—rather than *find*—coverage in the first instance. However, Arch's assertion is inconsistent with settled law and not based on any controlling precedent with analogous facts.

As outlined in greater detail in the opening Motion papers, under New York law an insurer's duty to defend is controlled by the operative pleadings. *Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 65 (2007); *see also Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004). Thus, while extrinsic evidence may be referenced to find an insured's duty was triggered, materials outside the pleadings cannot be used to defeat coverage which is based on the pleadings. *Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131 (2006) (observing that a duty to defend remains even if facts outside the pleadings indicate a claim may be meritless or not covered); *Fitzpatrick*, 78 N.Y.2d at 65–67.

Arch suggests that an intermediate appellate court implicitly departed from the Court of Appeals' above referenced precedent in *NGM Ins. Co. v. MGC Design & Constr. Corp.* (237 A.D.3d 958 (2d Dept. 2015)) ("*NGM*"). Dkt. 46, p. 6. Based solely on *NGM*, Arch contends that a court may rely on deposition testimony to absolve an insurer of its duty to defend. However, what Arch does not disclose is that in *NGM*,

1

the insurer sought summary judgment based, in part, on a policy exclusion.[1] Roberto Reply Decl., Ex. 15. Specifically, the insurer sought summary judgment by reasoning that the policy contained an exclusion for contractual claims *and*, as a result, the claim could not otherwise covered under the insuring agreement. *Id.*, R.257 ("Employers' liability policies are not intended to provide coverage for contractual indemnification claims, and the NGM policy contains an unambiguous exclusion that plainly precludes coverage for contractual liability claims against MGC."). Further, unlike here, the insurer in *NGM* agreed to provide a defense before it commenced a declaratory judgment action to resolve the disputed coverage issues. *Id.* Thus, *NGM* is consistent with the principle that a court may rely on extrinsic evidence *only* to determine application of an insurance policy exclusion and provides no support for the proposition that such materials can be used to determine whether coverage is triggered in the first instance. *See e.g. Fitzpatrick*, 78 N.Y. 2d at 66 ("[T]he courts of this State have refused to permit insurers to look beyond the complaint's allegations to avoid their obligation to defend").

Arch's additional attempt to analogize its reliance on Cacho's deposition testimony to precedent involving reference to a bill of particulars is similarly unavailing. Dkt. 46, pp. 6–7. Citing to *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.* (252 F.3d 608 (2d Cir. 2001)) ("*Hugo Boss*"), Arch suggests that "if a plaintiff's bill of particulars can cut off a defense obligation . . . then a plaintiff's deposition testimony also must be able" to do so, because they are "both sworn statements given by a plaintiff." Dkt. 46, p. 7.

---

[1] Arch's counsel in this action also represented the insurer in *NGM*. Thus, while the Appellate Division's decision does not expressly reference the insurer's partial reliance on a policy exclusion, that aspect of the procedural history in *NGM* was known to counsel. The underlying motion papers from *NGM* referencing the insurer's reliance on a policy exclusion are provided as Exhibit "15" to the undersigned's Reply Declaration.

Arch misreads *Hugo Boss*. The Second Circuit recognized that New York law allows an insurer to "extricate itself early by demanding a bill of particulars" to resolve factual ambiguities in the underlying pleadings. 252 F.3d at 622. However, in dicta, the court explained that if a claim is potentially covered under an insurance policy but the underlying complaint creates a factual ambiguity as to whether a policy exclusion bars coverage, a bill of particulars may clarify the ambiguity. 252 F.3d at 622. In other words, *Hugo Boss* merely recognizes that a bill of particulars can amplify or clarify ambiguous pleadings, which are then analyzed for coverage under the standards set forth in *Fitzpatrick* and its progeny. At no point did the Second Circuit suggest that an insurer could use a bill of particulars to terminate a duty to defend which is otherwise triggered by the pleadings, as Arch now suggests.

Thus, because Arch cannot rely on extrinsic evidence to avoid coverage in the first instance, the Court should grant this Motion. Indeed, Arch concedes that pleadings in the Underlying Action allege JJAA provided the ladder from which Cacho fell (Dkt. 46, p. 5) which, it is respectfully submitted, create at least a reasonable possibility that JJAA's actions were *a* proximate cause of the accident. And since there can be multiple proximate causes of an accident (*Turturro v. City of New York*, 28 N.Y.3d 469, 483 (2016)), such a possibility is all that is needed to trigger Arch's duty to defend Trogon.

### B. Arch fails to show there is no reasonable possibility that the subject ladder was a proximate cause of Cacho's accident.

Arch also claims the Motion should be denied because "Trogon did not allege that there was anything wrong" with the ladder, and "a perfectly good ladder cannot itself be a cause of an accident." Dkt. 46, p. 5. However, this conclusory assertion is at odds with the pleadings.

In his complaint, Cacho alleged the defendants failed to provide him with "proper and safe elevated working surfaces, scaffolds and ladders, so fixed, secured

3

*and/or maintained* and braced so as to prevent [him] from falling." Roberto Decl., Ex. 5, ¶ 32 (emphasis added). Cacho's bill of particulars also asserted the ladder was defective in that it did not have "slip resistant pads on the bottom of both rails/feet." Dkt. 39-5, ¶ 6. Thus, on their face, Cacho's pleadings raise a reasonable possibility that a defect in the ladder (*e.g.*, a lack of slip resistant pads) proximately caused his accident. Arch is also incorrect that Trogon did not allege the subject ladder was defective. The third-party complaint pled that JJAA did not properly repair and maintain the subject ladder, implicitly alleging there was a problem with the ladder's condition. Roberto Decl., Ex. 9, ¶ 28; Ex. 11, ¶¶ 11–12.

Additionally, Cacho's deposition testimony that the ladder "moved" before he fell is consistent with his allegation that the subject ladder did not have slip resistant pads on its feet. Dkt. 36-5, p. 54; Dkt. 39-5, ¶ 6. Thus, even if the pleadings did not already allege a defect in the ladder's condition, the available evidence—which this Court *can* consider to determine whether coverage is triggered in the first instance—buttresses the possibility that a defect with the ladder proximately caused the accident.

### C. Cacho testified that he had no idea who provided the ladder.

For the reasons set forth above, the Court should not entertain Arch's attempt to disprove coverage based on Cacho's deposition testimony. But if the Court does consider extrinsic evidence to limit Arch's duty to defend, the contention that Cacho testified Big Apple provided the subject ladder is incorrect and based on misleading citations (Dkt. 46, pp. 7–8).

In support of its claim that Cacho "testified that he was using equipment and materials provided by Big Apple" (*id.*, p. 7), Arch cites testimony relating to a hammer Cacho says he received from his foreman and the plywood forms he was removing at the time of the accident. *Id.*, citing Dkt. 36-5, pp. 40 ("A hammer, only a hammer."), 43 (describing plywood forms).

4

However, Arch does not acknowledge or cite the portion of Cacho's testimony in which he did address the subject ladder's origin. When asked if he obtained the ladder from Big Apple, Cacho responded, "*I do not know who it belonged to. I just used it.*" Roberto Decl., Ex. 13, p. 45 (emphasis added); Dkt. 36-5, p. 45. Cacho also testified no one told him to use the ladder and that he did not use the ladder at any other time before the alleged accident. *Id.*, p. 46. Missing from this exchange was any testimony suggesting that Big Apple provided the subject ladder, as the Opposition implies. Thus, the notion that Cacho's testimony "extinguished" any possibility that JJAA provided the ladder (and was a proximate cause of the accident) is nonsense.

### D. The pleadings raise a reasonable possibility that JJAA's failure to meet its safety obligations was a proximate cause of the accident.

The opening Motion papers also show there is a reasonable possibility that Arch will be required to indemnify Trogon based on the allegations that JJAA negligently supervised Cacho's work. Dkt. 45, pp. 10–13. As noted in the previous submission, (1) third-party pleadings in the Underlying Action allege that Cacho worked for JJAA and sustained his injuries while he was under its supervision and control, and that JJAA was responsible for all safety precautions and procedures for its employees' work; and (2) that Cacho alleged the first-party defendants—and their agents—were negligent, reckless, and careless in their supervision and direction at the worksite. Roberto Decl., Ex. 5, ¶ 32; Ex. 7, ¶ 19; Ex. 9, ¶¶ 10–12, 23–24; Ex. 11, ¶¶8–10.

However, Arch hardly addresses these pleadings, glossing over them with three sentences devoid of any reasoned analysis. Dkt. 46, pp. 4–5.[2]

---

[2] In contrast, Arch devotes almost a full page of its brief to the proposition that employment status does not, standing alone, provide a sufficient nexus for proximate causation even though it acknowledges the Motion says as much (Dkt. 46, p. 4) (citing Dkt. No. 45, p. 11).

To the extent Arch offers any cursory argument, it cites *Ohio Sec. Ins. Co. v. Travelers Indem. Co.* (19-cv-1355 (AJN), 2021 WL 797670, 2021 U.S. Dist. LEXIS 38292 (S.D.N.Y. 2021)) to argue that allegations that a named insured "had safety obligations at a project are insufficient to trigger a duty to defend . . . absent allegations of how the named insured breached its safety obligations and how that breach caused the accident." Dkt. 46, pp. 4–5. However, the district court's decision does not support Arch's broad assertion. The court indicated the underlying pleadings did not contain any allegations regarding the named insured's safety obligation, a contention which was raised "for the first time" on reply during dispositive motion practice. 2021 U.S. Dist. LEXIS 38292 at **12. The district court was therefore left to determine whether extrinsic evidence created a reasonable possibility of coverage and concluded the parties' contracts did not support that contention. *Id.* at ** 12–13. Here, in contrast, the pleadings set forth allegations regarding JJAA's safety obligations, articulating an independent basis for the Court to determine there is a reasonable possibility that JJAA's acts were a proximate cause of the accident. Further, as noted above, Arch cannot use extrinsic evidence in an attempt to defeat this conclusion. Thus, *Travelers Indem. Co.* is distinguishable and inapposite.

Arch also argues that "JJAA had no safety obligations to Cacho as his employer because it was not his employer" (Dkt. 46, p. 5) even though, as previously noted, pleadings in the Underlying Action *do* allege that JJAA employed Cacho. Furthermore, Cacho's bill of particulars and deposition testimony stating that he worked for Big Apple is not dispositive. Third-party pleadings in the Underlying Action also allege that Cacho was a "borrowed or special employee" (Roberto Decl., Ex. 11, ¶ 17). However, Arch fails to explain how these pleadings do not raise a reasonable possibility that Cacho was JJAA's special employee (*see Bautista v. David Frankel Realty, Inc.*, 54 A.D.3d 549, 550 (1st Dept. 2008)) without resorting to extrinsic evidence. Dkt. 46, p. 4 n 1.

6

Furthermore, even if the pleadings do not already raise a reasonable possibility that Cacho was a special employee of JJAA, Arch fails to provide *any* response to the Motion's argument that Cacho alleged the first-party defendants *and their "agents"*—were negligent in their supervision and direction at the worksite. Dkt. 45, p. 11; Roberto Decl., Ex. 5, ¶ 32. The opening motion papers argue that Cacho's pleading regarding the defendants' "agents," and the ambiguities as to JJAA's role at the worksite and its relationship with Cacho, are analogous to the facts of *City of New York v. Harleysville Ins. Co.* (682 F. Supp. 3d 335 (S.D.N.Y. 2023)). Dkt. 45, p. 12. Because Arch does not response to this argument or attempt to distinguish *Harleysville*, the Court should deem that branch of the Motion as unopposed.

### E. Arch cannot avoid its duty to defend Trogon based on its misplaced untimely notice argument.

Finally, Arch asserts the Court should deny the Motion because its duty to defend Trogon was vitiated, claiming the tender letter was untimely. Dkt. 46, p. 8. However, Arch's argument does not withstand the slightest scrutiny.

First, Arch does not dispute that failure to raise a ground for disclaimer as soon as is reasonably possible precludes an insurer from later using it as a defense. *Roman Catholic Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 21 N.Y.3d 139, 146 (2013). Instead, Arch avoids its admitted failure to raise late notice in its disclaimer letter by claiming "it was not apparent that Arch had been prejudiced . . . until it was clear that JJAA had disappeared." Dkt. 46, p. 9. However, in its own summary judgment motion Arch argued, among other things, the tender was late as a matter of law—irrespective of prejudice—based on the dates when the tendering parties had notice of the Underlying Action (Dkt. 40, pp. 15–16). Arch cannot have it both ways, ignoring its previous arguments once it was confronted with its failure to comply with Insurance Law § 3420 (d) (2).

7

On that note, Arch's claim that Insurance Law § 3420(d)(2) does not apply between insurers is misplaced. Dkt. 46, p. 10. For that proposition, Arch relies on *JT Magen v. Hartford Fire Ins. Co.* (64 A.D.3d 266 (1st Dept 2009)) and another decision which relies on the same. However, in *JT Magen*, the Appellate Division recognized it had "distinguished between an insurer's own claim for a defense and indemnity and a tender letter by an insurer on behalf of its insured." 64 A.D.3d at 271. Sure enough, the only other precedent cited in Arch's papers on this issue arose from an insurer's direct claim for a declaratory judgment with respect to the defendant's obligations to their mutual insured after a non-party tendered to both parties. *Travelers Indem. Co. v. United States Fire Ins. Co.*, 1:22-cv-6440-MKV, 2024 WL 295355, 2024 U.S. Dist. LEXIS 13610, *3 (S.D.N.Y. 2024). Here, in contrast, Ohio Security tendered the defense and indemnification of Trogon to Arch (Dkt. 44, ¶¶ 6–8), exactly the situation contemplated in *JT Magen*.

Lastly, Arch's contention that Ohio Security "makes no attempt" to explain how Arch was not prejudiced by the purported late notice (Dkt. 46, p. 9) wholly ignores the Motion's arguments on that issue. The opening Motion papers explained that Arch cannot disclaim based on untimely notice unless it sustained prejudice *as a result* of such late notice but that Arch did not attempt to locate JJAA until several months after its July 31, 2023 disclaimer letter. Dkt. 45, p. 17. The Opposition's reliance on case law recognizing that an insurer must show prejudice *caused* by late notice does not cure Arch's own inability to make such a showing, at least where, as here, Arch itself apparently delayed in attempting to locate JJAA. Dkt. 46, pp. 8–9 (citing *Arch Specialty Ins. Co. v. Lineal Contr. Corp.*, 2024 N.Y. Slip Op. 30667(U), 2024 WL 919680, 2024 N.Y. Misc. LEXIS 1003 (Sup. Ct. N.Y. County 2024)).

## CONCLUSION

For these reasons and those set forth in the opening Motion papers, Ohio Security requests that the Court (1) grant its Motion for summary judgment for a declaration that Arch has a duty to defend Trogon in the Underlying Action; and (2) award such other relief as the Court deems just and proper.

**GERBER CIANO KELLY BRADY LLP**

By: */s/ Joanna M. Roberto*
    Joanna M. Roberto
    NY State Bar No. 2933042
    PO Box 1060
    Buffalo, NY 14201
    Telephone: (516) 329-9403
    jroberto@gerberciano.com

## <u>CERTIFICATION OF WORD COUNT</u>

I hereby certify that the total number of words in this Memorandum of Law, exclusive of tables and this certificate, is 2,723.

**GERBER CIANO KELLY BRADY LLP**

By: */s/ Joanna M. Roberto*
      Joanna M. Roberto
      NY State Bar No. 2933042
      PO Box 1060
      Buffalo, NY 14201
      Telephone: (516) 329-9403
      jroberto@gerberciano.com

10