UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OHIO SECURITY INSURANCE
COMPANY,

                                    Plaintiff,

-against-

ARCH SPECIALTY INSURANCE
COMPANY,

                                    Defendant.

Case No. 1:24-cv-07128 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Ohio Security Insurance Company ("Plaintiff" or "Ohio Security") brings this action against Defendant Arch Specialty Insurance Company ("Arch"), seeking a declaratory judgment that Arch is obligated to defend and indemnify certain alleged insureds, as well as reimburse Ohio Security for costs incurred defending those alleged insureds. *See* Dkt. 20 ("Amended Complaint" or "Am. Compl.") ¶¶ 2, 17, 30-35, 52-53. Arch responded to Plaintiff's Amended Complaint with nineteen affirmative defenses. Dkt. 22 ("Answer"). Now before the Court are the parties' cross-motions for summary judgment regarding Arch's duty to defend the alleged additional insureds. *See* Dkt. 35 ("Def. Mot."); Dkt. 41 ("Pl. Mot."). For the reasons that follow, both motions are GRANTED in part and DENIED in part.

## BACKGROUND

The Court draws the following facts from the parties' submissions in support of their respective motions for summary judgment, including the parties' Local Rule 56.1 statements and responses. *See* Dkt. 37 ("JSUF"); Dkt. 38 ("Def. SUF"); Dkt. 40 ("Def. Br."); Dkt. 42 ("Pl. RSUF"); Dkt. 45 ("Pl. Br."); Dkt. 46 ("Def. Opp."); Dkt. 47 ("Def. RSUF"); Dkt. 48 ("Pl. Reply"). The Court also relies on the declarations of Matthew Ronan, Sarah Schulz, Joanna

Roberto, and Jeffrey Holmes, and the exhibits attached thereto.  Dkt. 36 ("Ronan Decl.");

Dkt. 39 ("Schulz Decl."); Dkt. 43 ("Roberto Decl."); Dkt. 44 ("Holmes Decl."); Dkt. 49

("Roberto Reply Decl.").

## I.    Factual Background

Arch issued JJAA Builders Corp. ("JJAA") a commercial general liability policy, number

AGL0063090-00, with a $1 million per-occurrence limit for the period December 14, 2020,

through December 14, 2021 (the "Arch Policy").  JSUF ¶ 1; *see generally* Schulz Decl., Ex. A

("Arch Policy").  The Arch Policy contains an additional-insured endorsement.  JSUF ¶ 2.  Per

the endorsement, a person or organization qualifies as an additional insured if JJAA was

performing operations for that person or organization, and if, before the loss, JJAA and that party

had agreed in a written, executed contract that the party would be added as an additional insured.

*Id.*  The additional insured coverage is, however, limited only to liability for bodily injury

"caused, in whole or in part," by JJAA's acts or omissions, or those of its subcontractors:

> **SECTION II – WHO IS AN INSURED** is amended to include any person or organization for whom you are performing operations when you and such person or organization have agreed in a written contract or agreement signed and dated prior to the loss for which coverage is sought that such person or organization be added as an additional insured on your policy, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of your subcontractors:
>
> a.    In the performance of your ongoing operations or "your work", including your "completed operations"; or
> b.    In connection with your premises owned by or rented to you.
>
> The person or organization does not qualify as an Additional Insured with respect to any independent act(s) or omission(s) of such person or organization.

2

*Id.*; Arch Policy at AIG000012.[1]  The Arch Policy also requires notice to Arch "as soon as practicable" of an occurrence that might result in a claim, of any claim or suit, and of any demands, notices, summonses, or legal papers received in connection with the claim or suit:

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

**a.**      You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)**      How, when and where the "occurrence" or offense took place;

**(2)**      The names and addresses of any injured persons and witnesses; and

**(3)**      The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.**      If a claim is made or "suit" is brought against any insured, you must:

**(1)**      Immediately record the specifics of the claim or "suit" and the date received; and

**(2)**      Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**   You and any other involved insured must:

**(1)**      Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit[.]

JSUF ¶ 3 (alteration in original); Arch Policy at AIG000055-000056.

---

[1] Given that there are several documents within the Arch Policy with separate paginations, the Court will adopt the parties' practice of referring to pages in the Arch Policy by bates number.

The present dispute arises out of an accident at a construction project located at 224 West 124th Street in Manhattan (the "Project"). JSUF ¶¶ 4-5. The Project involved multiple parties. Carthage 124th, L.P. ("Carthage") was the project owner. *See* Ronan Decl., Ex. D at 2. Carthage contracted the project out to a general contractor, Key Developers Inc. ("Key"). *See id.* Key then subcontracted to Big Apple Designers, Inc. ("Big Apple"), *see id.*, which sub-subcontracted to Trogon Interiors Inc. ("Trogon"), *see* Schulz Decl., Ex. B at 2-3. Trogon, in turn, subcontracted to JJAA. *See id.*, Ex. C at 2-3; JSUF ¶ 6. The relationships between the parties are illustrated below:



On October 15, 2021, Holban Cacho ("Cacho") was allegedly injured while working at the Project after falling from a ladder. JSUF ¶ 5. Cacho commenced a personal injury action in Bronx County Supreme Court against Carthage and Key shortly thereafter, on October 26, 2021 (the "Underlying Action"). *Id.* ¶ 4. Cacho's bill of particulars identifies Big Apple as his employer at the time of the incident. *Id.* ¶ 7; Schulz Decl., Ex. E ("Bill of Particulars") ¶ 17.a. The complaint in the Underlying Action alleges that Cacho "was caused to fall from [the] ladder by reason of the negligence of [Carthage and Key], [their] agents, servants and/or employees in the ownership, operation, direction, supervision, possession, control, construction, repair, rehabilitation and/or alteration of the . . . premises." Roberto Decl., Ex. 5 ("Cacho Compl.")

¶¶ 31, 55; Def. RSUF ¶ 15. Carthage and Key then commenced a third-party action against Big Apple on June 21, 2022, for negligence, contribution, contractual indemnification, common-law indemnification, and breach of contract. Schulz Decl., Ex. F ("First Third-Party Complaint"). The First Third-Party Complaint alleges, "upon information and belief," that Big Apple was Cacho's employer at the time of the accident. *Id.* ¶ 12.

Nearly a year after the First Third-Party Complaint was filed against it, Big Apple tendered its defense and indemnification to Trogon on May 11, 2023, seeking additional insured coverage under any policy Ohio Security had issued to Trogon. Holmes Decl., Ex. 2 at 1; Def. RSUF ¶ 28. Ohio Security had issued Trogon a commercial general liability policy that provided coverage from December 31, 2020, to December 31, 2021 (the "Ohio Security Policy"). Def. RSUF ¶ 14; *see generally* Holmes Decl., Ex. 1 ("Ohio Security Policy"). The Ohio Security Policy provided that "[i]n order [for Trogon] to minimize [its] loss exposure . . . [Trogon's] subcontractors must carry adequate insurance," defined as a policy with "at least $300,000 (Occurrence) limits for the period of time work was performed." Ohio Security Policy at 7; *see also* Schulz Decl., Ex. C ("Trogon & JJAA Agreement Rider") at 2-3 (requiring JJAA to obtain commercial general liability insurance with minimum $1 million per-occurrence limit). JJAA, as Trogon's subcontractor, obtained adequate insurance in the form of the Arch Policy. *See* Arch Policy at AIG000003 (providing $1 million per-occurrence limit). Accordingly, roughly one month after receipt of Big Apple's tender, Ohio Security tendered the defense and indemnification of Trogon, as well as Carthage, Key, and Big Apple, (together, the "Tendering Parties") to JJAA under the Arch Policy by letter dated June 16, 2023. Holmes Decl., Ex. 3 at 2; Def. RSUF ¶ 29. In that letter, Ohio Security observed that "[t]he tender [it] received state[d] that Trogon was [Cacho]'s employer. However, the Bill of Particulars list[ed] Big Apple Designers as the employer." Holmes Decl., Ex. 3 at 2. The letter further requested that JJAA

"forward th[e] letter to [its] liability carrier so they can review and provide a response." *Id.* Arch received Ohio Security's letter on June 29, 2023, and commenced its investigation into the matter shortly thereafter. Pl. RSUF ¶ 13. On July 5, 2023, Arch reached out to its contact at JJAA, Juana Vargas Contreras ("Contreras"), via email to obtain additional information regarding the Underlying Action, the incident, and the relationships between the parties involved. Schulz Decl., Ex. M at 2. When Arch did not receive a response, it emailed JJAA's broker on July 27, 2023, to obtain alternative contact information for JJAA. *Id.* at 5. JJAA's broker provided Arch with contact information for Alex Cid ("Cid"), a representative of JJAA. *Id.* at 4. With its investigation continuing in the background, Arch replied to Ohio Security's tender on July 31, 2023. Holmes Decl., Ex. 5 ("Denial Letter") at 1; Pl. RSUF ¶ 13. In its reply, Arch formally rejected Ohio Security's tender with respect to the Underlying Action. Denial Letter at 1. Specifically, Arch found that the "[t]ender lack[ed] existence of a written agreement that proceeds the subject occurrence, a condition precedent" and contained "no record . . . that the parties seeking coverage are named defendants in order to trigger the coverage sought." *Id.* at 2. In so finding, Arch cited Section II's additional insured endorsement within the Arch Policy. *Id.* It also "expressly reserve[d] all of its rights under the Arch Policy, including the right to assert additional defenses to any claim for coverage, if subsequent information indicates that such action is warranted." *Id.* at 3.

To that end, sometime in January 2024, Arch retained an investigator, Photofax Inc. ("Photofax"), to locate Contreras and Cid, the last known contacts of JJAA, so that Arch could connect with JJAA and investigate the incident further. *See generally* Schulz Decl., Ex. O. Photofax provided its final report on February 1, 2024, wherein it concluded that Contreras and Cid, and accordingly JJAA, could not be located. *See generally id.*, Ex. P. Arch subsequently

6

retained a second investigator, Roman & Associates ("Roman") to continue the search for JJAA. *See generally id.*, Exs. Q, R.  That investigation likewise proved fruitless.  *See id.*, Ex. S at 2.

In the interim, Big Apple, Carthage, and Key impleaded both Trogon and JJAA in the Underlying Action, seeking indemnification and alleging negligence, among other claims, in connection with Cacho's accident.  *See id.*, Ex. G ("Second Third-Party Complaint"); *id.*, Ex. H ("Third Third-Party Complaint"); *id.*, Ex. I ("Fourth Third-Party Complaint"); *id.*, Ex. J ("Fifth Third-Party Complaint"); *see also* Def. RSUF ¶ 16.  Big Apple asserts in the Second and Fourth Third-Party Complaints, dated August 8, 2023, and November 9, 2023, respectively, that JJAA — not Big Apple — was Cacho's employer at the time of the incident.  Second Third-Party Complaint ¶¶ 12-13; Fourth Third-Party Complaint ¶¶ 10-11.  Carthage and Key modified their theory of liability accordingly, later alleging in the Third Third-Party Complaint on September 25, 2023, that "upon information and belief" Cacho was an employee of Big Apple, Trogon, and JJAA.  Third Third-Party Complaint ¶¶ 17-19.  For its part, Trogon also alleged on March 4, 2024, that JJAA was Cacho's employer, Fifth Third-Party Complaint ¶¶ 8-10, and that JJAA "provided [Cacho] with material and equipment to use while performing work [on the Project]," including the ladder, *id.* ¶¶ 11-12.  In its answers to the Third, Fourth, and Fifth Third-Party Complaints, JJAA did not deny the allegations that it employed Cacho and supplied the ladder; instead, it denied having knowledge or information sufficient to form a belief as to the truth of those allegations.  Roberto Decl., Ex. 8 ¶ 4; *id.*, Ex. 10 ¶¶ 4,7; *id.*, Ex. 12 ¶ 3; *see also* Def. RSUF ¶ 20.[2]  The Underlying Action subsequently proceeded through discovery.

During his May 14, 2024 deposition in the Underlying Action, Cacho testified that the ladder began to wobble and fell over while he was on its seventh or eighth rung, leading him to

---

[2] The answers were not filed by JJAA itself, but rather filed on behalf of JJAA by counsel that Arch retained in furtherance of its defense of JJAA.  *See* Def. Br. at 9 n.1.

fall off the ladder and onto metal debris that cut his finger. Def. RSUF ¶ 24; Ronan Decl., Ex. E ("Cacho Tr.") at 44:20-45:5, 62:4-25. He did not know who had supplied the ladder, Cacho Tr. at 45:15-23, 119:3-5; Def. RSUF ¶ 26, nor could he confirm whether the fall was the result of some defect in the ladder, *see* Cacho Tr. at 121:12-14, 128:4-6. Cacho further remarked that, following the accident, while Cacho was receiving treatment for his injury at a nearby clinic, another Big Apple employee told him to report JJAA as his employer, Pl. RSUF ¶ 12; Cacho Tr. at 138:21-139:8; *see also id.* 82:25-84:5, 85:19-86:23, 155:18-21. Indeed, the accident report identifies JJAA as Cacho's employer, but it is unclear who completed the report. Roberto Decl., Ex. 6 ("Accident Report"); Def. RSUF ¶ 27. Despite these inconsistencies, Cacho asserted at his deposition that his understanding was always that both he and his co-worker worked for Big Apple. *See* Cacho Tr. at 139:9-13; *see also id.* at 31:5-12 (testifying that Big Apple has been his only employer since moving to the United States); *id.* at 32:5-9 (testifying that he had worked continuously at Big Apple from 2019 to the date of the accident); *id.* at 33:8-15 (testifying that he was working for Big Apple at the time of his accident); *id.* at 34:13-21, 35:4-10 (testifying that while "[t]here were many companies" at the Project, he "would sign [his name] where it says Big Apple" on the sign-in sheet).

Like Cacho, JJAA was scheduled to appear for a deposition in the Underlying Action. Ronan Decl., Ex. J at 2. However, on June 26, 2024, counsel for JJAA informed the parties that JJAA was unable to appear because counsel had failed to locate a witness to be deposed on its behalf. *Id.* In response, Carthage and Key, as well as Cacho, moved to strike JJAA's answers on June 28, 2024, and July 3, 2024, respectively. *See id.*, Exs. F, H; *see also id.*, Exs. G, I (reflecting later-filed motions to strike by Trogon and Big Apple). Faced with its inability to contact JJAA despite extensive investigation and the potential of sanctions for JJAA's related failure to appear, on July 12, 2024, Arch concluded that it had been prejudiced by the Tendering

Parties' untimely notice and sent a revised letter disclaiming coverage on that additional basis. *See* Schulz, Ex. T ("Revised Denial Letter"). The Revised Denial letter reiterated Arch's denial of coverage on the following bases, among others: (1) because "Carthage, Key, and Big Apple did not enter into a contract with JJAA requiring JJAA to name them as additional insureds, [they] do not qualify as additional insureds under the Arch policy"; (2) "because Cacho has not alleged that JJAA caused his injury and Arch's investigation has not revealed any facts showing that JJAA caused his injury" "Carthage, Key, Big Apple, and Trogon are not additional insureds"; and (3) because "[i]t has recently become apparent to Arch that it has been prejudiced as a result of the late notice to Arch, . . . Arch further disclaims coverage to Carthage, Key, Big Apple, and Trogon as a result of the late notice to Arch and the prejudice to Arch resulting from that late notice." *Id.* at 3-5. Arch sent the Revised Denial Letter to Carthage, Key, Big Apple, and Trogon. *Id.* at 1.

On January 8, 2025, the court in the Underlying Action denied the various motions to strike given the good faith efforts of JJAA's counsel to locate a witness for JJAA, and their representation that Cid and Contreras, "the individuals affiliated with JJAA, moved back to Mexico sometime in August/September 2023." Ronan Decl., Ex. J at 2. Instead, the court precluded JJAA "from offering testimony at trial or presenting any evidence in the form of affidavits in motion practice form anyone on behalf of JJAA." *Id.* at 3. To date, Ohio Security has been defending Trogon in the Underlying Action. Def. RSUF ¶ 32.

## II.    Procedural History

Plaintiff commenced this action on September 19, 2024, seeking a declaration that Arch must defend and indemnify the Tendering Parties in the Underlying Action and reimburse Ohio Security for defense costs it has incurred to date. Dkt. 1 ("Compl.") at 10. The Complaint also named JJAA as a defendant. *Id.* On October 16, 2024, Arch filed a motion to dismiss the

9

Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Dkt. 11.  Shortly

thereafter, on October 21, 2024, JJAA filed a motion to dismiss under Rules 12(b)(1) and

12(b)(6).  Dkt. 13.  Ohio Security filed an opposition to Arch's motion to dismiss on November

6, 2024, Dkt. 17, but it also filed its Amended Complaint, which terminated JJAA as a party and

rendered both motions moot, later that same day, *see* Am. Compl.  Consequently, the Court

dismissed both motions to dismiss, without prejudice to refiling with respect to the Amended

Complaint.  Dkt. 18.  On November 22, 2024, Arch submitted its Answer to the Amended

Complaint.  *See* Answer.  The action proceeded through discovery.

Following the close of discovery, on July 30, 2025, Arch moved for summary judgment

under Rule 56.  Def. Mot.; Def. Br.; JSUF; Def. SUF.  Plaintiff filed its joint cross-motion for

summary judgment and opposition to Defendant's motion on August 20, 2025.  Pl. Mot.; Pl. Br.;

Pl. RSUF.  Defendant submitted its joint opposition to Plaintiff's motion and reply in further

support of its motion on September 10, 2025.  Def. Opp.; Def. RSUF.  And Plaintiff submitted

its reply in further support of its motion on October 1, 2025.  Pl. Reply.  The motions are thus

fully briefed.

## LEGAL STANDARD

Under Rule 56, a moving party is entitled to summary judgment if, on any claim or

defense, that party "shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' only if it

'might affect the outcome of the suit under the governing law[,]' [and] [a] dispute is 'genuine' if

'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"

*Rosen v. UBS Fin. Servs. Inc.*, No. 22-cv-03880 (JLR), 2023 WL 6386919, at *4 (S.D.N.Y. Sept.

29, 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "The moving

party bears the initial burden of demonstrating the absence of a genuine issue of material fact."

*JTRE Manhattan Ave. LLC v. Cap. One, N.A.*, No. 21-cv-05714 (JLR), 2024 WL 3227010, at *8 (S.D.N.Y. June 27, 2024).

At summary judgment, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Estate of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016) (quoting *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)). "On cross-motions for summary judgment, each moving party 'has the burden of presenting evidence to support its motion that would allow the district court, if appropriate, to direct a verdict in its favor.'" *S.E.C. v. Cole*, No. 12-cv-08167 (RJS), 2015 WL 5737275, at *3 (S.D.N.Y. Sept. 19, 2015) (quoting *McDonnell v. First Unum Life Ins. Co.*, No. 10-cv-08140 (RPP), 2013 WL 3975941, at *13 (S.D.N.Y. Aug 5, 2013)). To defeat a motion for summary judgment, the nonmoving party must advance more than "a scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

The parties' cross-motions present two distinct questions. The first is whether Carthage, Key, and Big Apple satisfy the Arch Policy's additional-insured endorsement, which requires a written contract between JJAA and the putative additional insured. Def. Br. at 1, 10; Def. Opp. at 3. The second is whether Arch owes Trogon a defense where Trogon indisputably contracted with JJAA, the underlying third-party pleadings alleged that JJAA furnished the ladder involved in the accident and employed or supervised Cacho, and Arch relies primarily on later deposition testimony and a late-notice defense to avoid coverage. Pl. Br. at 4-18; Def. Br. at 1-2, 10-17; Def. Opp. at 3-10; Pl. Reply at 1-8.

11

For the reasons below, Arch's motion is granted insofar as it seeks a declaration that Arch owes no duty to defend Carthage, Key, or Big Apple, and Ohio Security's motion is granted insofar as it seeks a declaration that Arch owes Trogon a duty to defend. Both motions are otherwise denied. In short, the contractual-privity requirement defeats coverage for Carthage, Key, and Big Apple, but not for Trogon. As to Trogon, the underlying pleadings triggered Arch's defense obligation, which neither Cacho's deposition testimony nor Arch's untimely-notice theory extinguishes as a matter of law.

## I.    Legal Framework

With respect to the merits of the issues presented, the Court will apply New York law in interpreting the Arch Policy, as both parties rely on New York case law in their briefs. *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (applying New York law where the parties' briefs assumed that New York law governed the issues); *Margrabe v. Sexter & Warmflash, P.C.*, No. 07-cv-02798 (KMK) (GAY), 2009 WL 361830, at *5 n.5 (S.D.N.Y. Feb. 11, 2009) (applying New York law because "[t]he [p]arties appear[ed] to agree that [it] govern[ed] [the] dispute"), *aff'd*, 353 F. App'x 547 (2d Cir. 2009) (summary order). "Generally, [under New York law,] the courts bear the responsibility of determining the rights or obligations of parties under insurance contracts based on [the] specific language of the policies." *Aspen Specialty Ins. Co. v. 4 NYP Ventures LLC*, 162 F. Supp. 3d 337, 341 (S.D.N.Y. 2016) (quoting *State of N.Y. v. Home Indem. Co.*, 486 N.E.2d 827, 829 (N.Y. 1985)). "[U]nder New York law, '[a]s with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court.'" *Marcus & Cinelli, LLP v. Aspen Am. Ins. Co.*, 158 F.4th 333, 340 (2d Cir. 2025) (quoting *Lend Lease (US) Constr. LMB Inc.*, 71 N.E.3d 556, 560 (N.Y. 2017)). Here, neither party argues that the Arch Policy is ambiguous, and the Court

agrees that the relevant provisions are clear on their face. The Court will therefore "apply the unambiguous contract language to the undisputed facts of the case and rule on the parties' compliance with the contract language." *Huff v. Cruz Contracting Corp.*, 643 F. Supp. 2d 344, 362 (S.D.N.Y. 2009); *see Conley & Tibbitts Props., LLC v. Leatherstocking Co-op Ins. Co.*, 971 N.Y.S.2d 776, 777 (N.Y. App. Div. 2013) ("Where, as here, the provisions of an insurance contract are clear and unambiguous, they must be enforced as written." (alteration adopted) (internal quotation marks and citation omitted)).

## II.   Carthage, Key, and Big Apple Are Not Additional Insureds

Arch is entitled to summary judgment declaring that it owes no duty to defend Carthage, Key, or Big Apple. The Arch Policy does not confer blanket downstream coverage on every entity connected to JJAA's work. Rather, it confers additional-insured status only where JJAA and "such person or organization" agreed in a written contract, signed before the loss, that the person or organization would be added as an additional insured. Arch Policy at AIG000012; *see* Def. Br. at 10; Pl. Br. at 5. Both parties agree that Trogon entered into such a written contract with JJAA. Pl. Br. at 2; Def. Br. at 3; *see generally* Trogon & JJAA Agreement Rider. However, Ohio Security does not establish that the same is true for Carthage, Key, or Big Apple. To the contrary, Arch points out, and Ohio Security effectively concedes, that only Trogon had contractual privity with JJAA. Def. Br. at 10 ("Only Trogon entered into a contract with JJAA"); Def. Opp. at 3 ("Ohio Security has implicitly conceded that point by ignoring it entirely in its opposition to Arch's motion."); *see also generally* Pl. Br.; Pl. Reply.

Because that written contractual relationship is a condition precedent to additional insured status under the Arch Policy, Carthage, Key, and Big Apple cannot qualify. *See Triborough Scaffolding & Hoisting Servs., Inc. v. S.W. Marine & Gen. Ins. Co.*, No. 23-cv-07324 (PKC), 2025 WL 2720790, at *5 (S.D.N.Y. Sept. 24, 2025) ("Generally, the language . . . 'you

13

and such organization have agreed in a written contract that such person or organization be added as an additional insured' has been held to require privity of contract with the named insured for an entity to qualify as an additional insured." (alterations adopted) (citation omitted)); *see, e.g.*, *AB Green Gansevoort, LLC v. Peter Scalamandre & Sons, Inc.*, 961 N.Y.S.2d 3, 4-5 (N.Y. App. Div. 2013) (finding no duty to defend given similar language and lack of contractual privity); *Gilbane Bldg. Co./TDX Const. Corp. v. St. Paul Fire & Marine Ins. Co.*, 38 N.Y.S.3d 1, 5 (N.Y. App. Div. 2016) (same), *aff'd sub nom.*, *Gilbane Bldg. Co./TDX Constr. Corp. v. St. Paul Fire & Marine Ins. Co.*, 97 N.E.3d 711 (N.Y. 2018); *Samsung Fire & Marine Ins. Co. Ltd. v. RLI Ins. Co.*, No. 655169/2016, 2018 WL 310322, at *5-6 (N.Y. Sup. Ct. Jan. 3, 2018) (same); *see also Linarello v. City Univ. of N.Y.*, 774 N.Y.S.2d 517, 520 (N.Y. App. Div. 2004) (finding, in light of contractual privity condition precedent, that third-party beneficiary of additional insured does not itself become an additional insured).  Accordingly, Arch owes no duty to defend Carthage, Key, or Big Apple.

### III.    Arch Owes a Duty to Defend Trogon

#### A.    Trogon Qualifies as an Additional Insured

Trogon stands differently.  There is no genuine dispute that Trogon and JJAA entered into a written agreement, before the loss, under which JJAA agreed to obtain commercial general liability insurance naming Trogon as an additional insured.  Pl. Br. at 2, 5; Def. Br. at 1, 10. Indeed, Ohio Security notes that Arch itself relies on that agreement and acknowledges that "[o]nly Trogon entered into a contract with JJAA."  Pl. Br. at 5 n.1 (quoting Def. Br. at 10).

Trogon therefore satisfied the Arch Policy's contractual-privity requirement and qualifies as a potential additional insured — subject to the separate requirement that the bodily injury be "caused, in whole or in part," by JJAA's acts or omissions.  Arch Policy at AIG000012.

14

B.    **The Underlying Pleadings Triggered a Duty to Defend Trogon**

The Court next considers whether the operative pleadings in the underlying action raised a reasonable possibility that Cacho's injuries were caused, at least in part, by JJAA's acts or omissions and concludes that they did.

Under New York law, an insurer's duty to defend "is 'exceedingly broad' and far more expansive than the duty to indemnify." *High Point Design, LLC v. LM Ins. Corp.*, 911 F.3d 89, 94-95 (2d Cir. 2018) (quoting *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 609 N.E.2d 506, 509 (N.Y. 1993)). "The duty to defend is triggered whenever the allegations of a complaint, liberally construed, suggest a reasonable possibility of coverage, or the insurer has actual knowledge of facts establishing a reasonable possibility of coverage." *Rinaldi v. Wakmal*, 123 N.Y.S.3d 156, 158 (N.Y. App. Div. 2020) (citation omitted); *accord Frontier Insulation Contractors, Inc. v. Merchs. Mut. Ins. Co.*, 690 N.E.2d 866, 868 (N.Y. 1997); *see also U.S. Specialty Ins. Co. v. Am. Empire Surplus Lines Ins. Co.*, No. 25-cv-07415 (JSR), 2025 WL 3157798, at *4 (S.D.N.Y. Nov. 12, 2025) (finding that a third-party complaint may trigger an insurer's duty to defend); *New York Marine & Gen. Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, 632 F. Supp. 3d 303, 308 (S.D.N.Y. 2022) (same). "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." *Auto. Ins. Co. of Hartford v. Cook*, 850 N.E.2d 1152, 1155 (N.Y. 2006) (citation omitted); *see also Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) ("The duty to defend remains even though facts outside the four corners of the pleadings indicate that the claim may be meritless or not covered." (alterations adopted) (internal quotation marks and citation omitted)). That said, "the insurer's duty to defend is not an interminable one, and will end if and when it is shown unequivocally that the damages alleged would not be covered by the policy." *Stein v. N. Assurance Co. of Am.*, 617 F. App'x 28, 30 (2d

15

Cir. 2015) (summary order) (alterations adopted) (quoting *Sturges Mfg. Co. v. Utica Mut. Ins. Co.*, 332 N.E.2d 319, 323 (N.Y. 1975)).  In other words, where an insurer's duty to defend turns on an unresolved factual dispute, "the duty to defend lasts only until the factual ambiguity is resolved in favor of the insurer." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 622 (2d Cir. 2001).

Where, as here, "an insurance policy is restricted to liability for any bodily injury 'caused, in whole or in part,' by the 'acts or omissions' of the named insured, the coverage applies to injury proximately caused by the named insured." *Burlington Ins. Co. v. NYC Transit Auth.*, 79 N.E.3d 477, 478 (N.Y. 2017); *see* Arch Policy at AIG000012.  Ohio Security identifies two pleaded theories tying JJAA to Cacho's accident.  First, the third-party complaints allege that JJAA furnished the ladder from which Cacho fell, and that JJAA failed to properly maintain and repair its equipment.  Pl. Br. at 3, 6-7, 10; *see* Fourth Third-Party Complaint ¶ 28 (alleging that Cacho's injury was caused by JJAA's failure to "maintain[] and repair[] equipment, and/or provid[e] all necessary safety equipment"); Fifth Third-Party Complaint ¶¶ 11-12 (alleging that "JJAA provided [Cacho] with material and equipment," including the "ladder").  Second, the third-party complaints allege that Cacho worked for JJAA, that Cacho was under JJAA's supervision and control, and that JJAA bore responsibility for safety precautions and procedures for the work being performed.  Pl. Br. at 7, 10-13; Third Third-Party Complaint ¶ 19 (alleging that Cacho was JJAA's employee); Fifth Third-Party Complaint ¶¶ 8-10 (alleging that JJAA "employ[ed]," "supervis[ed], direct[ed] and control[led]" Cacho); Fourth Third-Party Complaint ¶¶ 10-12 (same), ¶ 28 (alleging that Cacho's injury was caused by JJAA's failure to "train[] its agents").  Either theory raises, and certainly both together raise, a reasonable possibility that JJAA caused the accident "in whole or in part." *See Travelers Indem. Co. v. Harleysville Ins.*

*Co.*, No. 21-cv-01089 (MKB), 2024 WL 5657654, at *9 (E.D.N.Y. May 7, 2024) (collecting cases).

Arch argues that these allegations are too conclusory and do not establish "anything JJAA did or did not do that caused Cacho's injury." Def. Br. at 12-13; Def. Opp. at 4-5. That is incorrect. As to the ladder, Cacho's complaint in the Underlying Action alleges that Cacho "was caused to fall from [the] ladder by reason of the negligence of [Carthage and Key], [their] agents, servants and/or employees in the ownership, operation, direction, supervision, possession, control, construction, repair, rehabilitation and/or alteration of the [] premises." Cacho Compl. ¶¶ 31, 55. The third-party complaints then allege that JJAA furnished that ladder and failed to maintain and repair its equipment. Pl. Br. at 3, 6-7, 10; *see* Fourth Third-Party Complaint ¶ 28; Fifth Third-Party Complaint ¶¶ 11-12. That is not an abstract or conclusory connection to the accident. It is a specific allegation tying JJAA to the accident-causing instrumentality and to the condition of that instrumentality.

The allegations concerning JJAA's employment or supervisory role provide an additional, independent basis for a defense. The third-party complaints allege that Cacho worked for JJAA, that Cacho was under its supervision and control, and that JJAA was responsible for safety precautions and procedures. They also allege that the parties responsible for the site and their "agents" failed to properly supervise and direct the work. Pl. Br. at 7, 10-13; Third Third-Party Complaint ¶ 19; Fourth Third-Party Complaint ¶¶ 10-12, 28; Fifth Third-Party Complaint ¶¶ 8-10. Read together, those allegations raise a reasonable possibility that JJAA's acts or omissions in supervising the work contributed to the accident.

Arch responds that employment status alone is insufficient under the "caused, in whole or in part" language. Def. Opp. at 4. The Court agrees that employment status, by itself, is not always enough. *See, e.g.*, *Certain Underwriters at Lloyd's, London v. Travelers Cas. Ins. Co. of*

17

*Am.*, 664 F. Supp. 3d 288, 295 (E.D.N.Y. 2023) ("[E]mployer [status] is, standing alone, insufficient to raise a reasonable possibility of coverage because it says nothing about whose 'acts or omissions' proximately caused the accident."). Ohio Security says the same. Pl. Br. at 10-11. But the third-party complaints do not merely allege that JJAA employed Cacho. They alleged that JJAA furnished the ladder, failed to maintain the equipment, supervised and controlled Cacho's work, and bore responsibility for site safety as to his work. That combination of allegations suffices to trigger Arch's duty to defend.

For those reasons, the Court concludes that the underlying pleadings raised a reasonable possibility that JJAA caused, at least in part, Cacho's injuries, thereby triggering Arch's duty to defend Trogon.

## C.    Cacho's Deposition Testimony Does Not Relieve Arch of Its Duty to Defend

Arch next argues that any duty to defend was negated or extinguished by Cacho's later deposition testimony, which Arch reads as establishing that Big Apple, not JJAA, employed Cacho and provided the equipment he used. Def. Br. at 13-15; Def. Opp. at 6-8. That argument fails for two reasons.

As an initial matter, it is well-settled that an insurer cannot defeat a defense obligation in the first instance by resorting to evidence outside the four corners of the pleadings. *Employers Ins. of Wausau v. Duplan Corp.*, 899 F. Supp. 1112, 1122 (S.D.N.Y. 1995) ("[I]f the complaint or third-party complaint alleges a potentially covered claim, the insurer cannot rely upon extrinsic evidence showing the allegations are baseless in order to avoid the duty to defend."); *Zurich Am. Ins. Co. v. XL Ins. Am., Inc.*, 547 F. Supp. 3d 381, 401 (S.D.N.Y. 2021) ("Extrinsic evidence cannot be used to defeat a duty to defend that arises from the words of a complaint."), *opinion corrected on other grounds on reconsideration*, 556 F. Supp. 3d 301 (S.D.N.Y. 2021). However, "[a] narrow, but widely recognized exception to the [four corners] rule allows an

18

insurer to refuse or withdraw a defense if evidence extrinsic to those sources and 'unrelated to the merits of plaintiff's action[,] plainly take the case outside the policy coverage.'" *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 148 (2d Cir. 2004) (quoting Allan D. Windt, Insurance Claims and Disputes § 4:4 (West 2001)). "For this exception to apply, 'the extrinsic evidence relied upon may not overlap with the facts at issue in the underlying case.'" *Travelers Indem. Co. v. Harleysville Ins. Co.*, No. 18-cv-00600 (PGG), 2020 WL 1304085, at *4 (S.D.N.Y. Mar. 19, 2020) (quoting *United States Underwriters Ins. Co. v. Image By J & K, LLC*, 335 F. Supp. 3d 321, 331 (E.D.N.Y. 2018)). That is not the case here, where Arch attempts to rely on Cacho's deposition testimony regarding the incident to extinguish its duty to defend. Such extrinsic evidence cannot be relied on to defeat a duty to defend claim. *See City of New York v. Liberty Mut. Ins. Co.*, No. 15-cv-08220 (AJN), 2017 WL 4386363, at *13 (S.D.N.Y. Sept. 28, 2017) ("[T]he extrinsic evidence the Defendant has presented goes to an issue relevant to the merits of the underlying complaints. Under clearly established New York law . . . , such evidence cannot justify [insurer]'s refusal to defend[.]"); *see also id.* at *7 ("It is generally not relevant to the duty to defend whether the allegations in a complaint are, objectively, *true*.").

In support of its contrary position, Arch relies on three cases. Def. Br. at 13-15 (citing *Sturges*, 37 N.Y.2d at 74; *Hugo Boss*, 252 F.3d at 622; and *NGM Ins. Co. v. MGC Design & Constr. Corp.*, 233 N.Y.S.3d 564, 567 (N.Y. App. Div. 2025)). None establishes the broad proposition that Arch advances here, namely that any extrinsic evidence can be used to relieve an insurer of its duty to defend. Indeed, *Hugo Boss* lays out the legal landscape clearly. There, the court clarified two paths that an insurer may take to eliminate its duty to defend before resolution of the underlying complaint. First, where there is factual uncertainty over the existence of a duty to defend, "New York law permits the insurance company to extricate itself early by demanding a bill of particulars." *Hugo Boss*, 252 F.3d at 622; *see, e.g.*, *Sturges*, 37 N.Y.2d at 73 (evaluating

19

pleadings and bill of particulars to determine existence of duty to defend); *see also Diamond v. Sokol*, 468 F. Supp. 2d 626, 630 n.1 (S.D.N.Y. 2006) ("Under New York law, a bill of particulars is neither a pleading nor a discovery device.  It is an amplification of a pleading." (citation modified)), *on reconsideration*, 2007 WL 9815944 (S.D.N.Y. May 18, 2007).  Second, where there is legal uncertainty as to whether insurance coverage gives rise to a duty to defend, an insurer "can seek a declaratory judgment with respect to the relevant policy exclusion."  *Hugo Boss*, 252 F.3d at 622; *see, e.g.*, *NGM*, 233 N.Y.S.3d at 567-68 (N.Y. App. Div. 2025) (affirming grant of one such declaratory judgment).  Here, Arch tries to chart a much broader third path — using deposition testimony to claim there is no factual dispute as a matter of law — but the cases it cites do not condone that approach.

In any event, even if the Court were to consider Cacho's deposition testimony, it is not sufficiently definitive to eliminate Arch's duty to defend.  *See Int'l Bus. Machs. Corp.*, 363 F.3d at 148 ("[W]here the evidence offered does not allow a court to *eliminate* the possibility that the insured's conduct falls within coverage of the policy, the insurer is not relieved of its duty to defend." (internal quotation marks and citation omitted)).  When Cacho was asked whether he obtained the ladder from Big Apple, he responded: "I do not know who it belonged to.  I just used it."  Cacho Tr. at 45:15-23.  That testimony does not establish that JJAA did not provide the ladder.  To the contrary, it leaves the ladder's origin unresolved.  Pl. Reply at 4-5.  Further, despite Arch's assertion to the contrary, Def. Br. at 12; Def. Opp. at 3, Cacho could not confirm whether his fall was the result of some defect in the ladder, *see* Cacho Tr. at 121:12-14, 128:4-6.  Thus, because the ladder allegation is an independent basis for potential coverage, the deposition does not "unequivocally" negate coverage even if it casts doubt on whether JJAA employed Cacho.

Additionally, even Cacho's employment remains an open question. Ohio Security notes that the third-party pleadings allege that Cacho was a "borrowed or special employee" of JJAA and Arch has not shown that the deposition testimony forecloses that possibility as a matter of law. Fifth Third-Party Complaint ¶ 17; Pl. Br. at 7-8; Pl. Reply at 6. The Court need not decide whether that theory will ultimately prevail. It is enough that the record Arch cites is not so clear, unambiguous, and dispositive as to eliminate any possibility that JJAA had a causative role in the accident.

Accordingly, even considering the deposition testimony, Arch has not shown that its duty to defend Trogon was extinguished.

### D.    Arch Has Not Established Prejudice from the Timing of Trogon's Notice

Arch finally contends that any defense obligation was vitiated by untimely notice. Def. Br. at 15-17; Def. Opp. at 8-10. As a threshold matter, the parties dispute whether Arch preserved its right to disclaim coverage based on untimely notice. Ohio Security argues that Arch waived its right to a late-notice defense because Arch's Denial Letter did not raise it as a ground for denial of coverage, even though Arch had enough information at the time to do so. Pl. Br. at 16. Plaintiff further argues that the Denial Letter was defective under Insurance Law § 3420(d)(2) because Arch sent it only to Ohio Security, with copies to JJAA and JJAA's broker, but not to Trogon or the Tendering Parties. *Id.* at 17. Arch responds that it had a "duty to investigate whether the coverage defense applies before asserting it in a disclaimer letter," and that it needed to verify that it had been prejudiced before it could disclaim coverage based on late notice. Def. Opp. at 9-10. Once it had done so, and pursuant to its reservation of rights in the Denial Letter "to assert additional defenses to any claim for coverage, if subsequent information indicates that such action is warranted," Denial Letter at 3, Arch sent the Revised Letter invoking

the late-notice defense, Revised Denial Letter at 4-5.[3]  The Court need not address these threshold arguments because it is unpersuaded that Arch was prejudiced by Trogon's delayed notice.

The relevant delay identified by Arch is the period between May 11, 2023, when Trogon allegedly learned of the claim, and June 29, 2023, when Arch received notice.  Def. Br. at 16 ("Trogon was aware of the accident and lawsuit no later than the May 11, 2023 tender letter from Big Apple to Trogon."); Pl. Br. at 17.  Ohio Security's central response is that Arch has not shown prejudice caused by that 49-day gap, as it is required to do under Insurance Law § 3420. Pl. Br. at 17-18.  The Court agrees.

Under the Arch Policy, Trogon was required to "[n]otify [Arch] as soon as practicable" of the Underlying Action.  Arch Policy at AIG000056.  It did so 49 days after learning of the suit.  Def. Br. at 16; Pl. Br. at 17.  Insurance Law § 3420 provides that where, as here, "the notice was provided within two years of the time required under the policy," "the burden of proof shall be on . . . the insurer to prove that it has been prejudiced" by the failure to provide timely notice. Insurance Law § 3420(c)(2)(A); *Travelers Indem. Co. v. Patino*, No. 21-cv-02510 (LGS), 2022 WL 3701506, at *2 (S.D.N.Y. Aug. 26, 2022) ("For policies issued after 2009, an insurer may not deny coverage based on untimely notice unless the untimely notice prejudiced the insurer."); *see also* Insurance Law § 3420(a)(5) (requiring prejudice to assert untimely notice).

---

[3] Arch also relies on *JT Magen v. Hartford Fire Ins. Co.*, 879 N.Y.S.2d 100 (NY. App. Div. 2009) for the proposition that "a plaintiff insurer cannot maintain a claim against a defendant insurer based on the latter's alleged failure to timely disclaim coverage under Insurance Law § 3420(d)(2)."  Def. Opp. at 10.  However, *JT Magen* specifically "distinguished between an insurer's own claim for a defense and indemnity and a tender letter by an insurer on behalf of its insured," finding that the latter was permissible.  *JT Magen*, 879 N.Y.S.2d at 103.  Here, Ohio Security submitted its tender letter on behalf of the Tendering Parties, Holmes Decl., Ex. 3 at 2; Def. RSUF ¶ 29; *see also* Pl. Reply at 8, so it is not barred from arguing that Arch failed to timely disclaim coverage based on late notice.

22

Arch's prejudice theory is that, by the time it learned of Trogon's claim, JJAA had disappeared, making it harder to investigate and defend. Def. Br. at 16-17; Def. Opp. at 8-10. To prevail on that theory, Arch must show that receiving notice on June 29 rather than sometime shortly after May 11 is what caused the prejudice. Arch has made no such showing. Instead, the record indicates only that Arch undertook efforts months later, in January 2024, to locate JJAA, and that JJAA's representatives allegedly left the country in August or September 2023 — that is, one to three months after Trogon provided notice to Arch. *See* Ronan Decl., Ex. J at 2 (observing that "the individuals affiliated with JJAA, moved back to Mexico sometime in August/September 2023"); Schulz Decl., Ex. M at 2, 5 (reflecting three-week gap between Arch's first email outreach to JJAA and any subsequent follow up); *see generally* Schulz Decl., Exs. O, P (documenting 2024 investigation). In other words, the JJAA representatives did not leave the country during the alleged period of delay between May 11 and June 29, 2023. Therefore, Arch has not established that the difference between notice on May 11 and notice on June 29 is what resulted in its inability to contact JJAA. *Compare Arch Specialty Ins. Co. v. Lineal Contracting Corp.*, No. 655802/2021, 2024 WL 919680, at *17-18 (N.Y. Sup. Ct. Feb. 20, 2024) (finding prejudice where Arch's insured "disappeared *prior to* [Arch] receiving the notice" (emphasis added)), *with* Ronan Decl., Ex. J at 2 (observing that "the individuals affiliated with JJAA, moved back to Mexico sometime in August/September 2023," one to three months *after* Trogon gave notice).

That failure is dispositive. Even accepting that Arch may disclaim coverage for untimely notice upon a proper showing of prejudice, the burden remains on Arch to connect the alleged prejudice to the lateness of the notice it complains about. Arch has not done so here. Because Arch has not shown prejudice from the timing of Trogon's notice, the late-notice defense does

23

not entitle Arch to summary judgment against Trogon and does not defeat Ohio Security's claim for a declaration of a duty to defend.

## CONCLUSION

For the foregoing reasons, Arch's motion for summary judgment is GRANTED in part and DENIED in part, and Ohio Security's motion for summary judgment is likewise GRANTED in part and DENIED in part.

Arch's motion for summary judgment is GRANTED as to Carthage, Key, and Big Apple. The Court declares that Arch owes no duty to defend those entities in the Underlying Action because they did not satisfy the Arch Policy's contractual-privity requirement for additional-insured status.

Ohio Security's motion for summary judgment is GRANTED as to Trogon on the issue of Arch's duty to defend.  The Court declares that Arch owes Trogon a duty to defend in the Underlying Action.

The Clerk of Court is respectfully directed to terminate the motions at Dkts. 35 and 41.

Dated:  March 30, 2026
        New York, New York

SO ORDERED.

_____
JENNIFER L. ROCHON
United States District Judge